**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Lloyd C. PAYNE, Defendant–Appellant.**

**No. 91–5753.**

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 4, 1991.

Decided Jan. 13, 1992.

Allen M. Lenchek, Allen M. Lenchek, P.C., Washington, D.C., argued for defendant-appellant.

Richard Charles Kay, Asst. U.S. Atty., Baltimore, Md., argued (Richard D. Bennett, U.S. Atty., on brief), for plaintiff-appellee.

Before ERVIN, Chief Judge, WILKINSON, Circuit Judge, and MICHAEL, District Judge for the Western District of Virginia, sitting by designation.

## OPINION

WILKINSON, Circuit Judge:

At issue in this appeal is whether a statement about incriminating evidence made by a law-enforcement official in the presence of a suspect violates the precepts of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). After expressing a desire to consult with a lawyer, appellant made incriminating comments to a federal agent in response to a declaratory statement by the agent that described certain inculpatory evidence possessed by the government. Appellant argues that his comments must be suppressed under *Miranda* as a matter of law. We decline appellant's invitation to expand the scope of the *Miranda* doctrine in this fashion and affirm his conviction.

### I.

Appellant Lloyd C. Payne sold an ounce of cocaine to an undercover FBI agent on December 1, 1988, and again on December 9. Because these transactions violated the conditions of Payne's release pending incarceration for a prior conviction for federal income tax evasion, the United States moved to revoke his release on April 28, 1989, and a bench warrant was issued for his arrest. In addition, the United States

obtained search warrants for Payne's place of business, where the drug sales occurred, and for his residence.

Upon his arrest on May 2, Payne was apprised of his *Miranda* rights and indicated his desire to consult with an attorney. He was then transported to an FBI office in Hyattsville, Maryland for processing, where he spoke with his attorney by telephone and indicated to the agents that he would consult with counsel in person before speaking with them. When processing was complete, Payne was transported by car to Baltimore, where he was turned over to the United States Marshals Service.

The events that form the basis for appellant's constitutional arguments occurred during the car ride from Hyattsville to Baltimore. During the journey, two FBI agents were in the front seat and Payne was seated in the rear next to FBI Special Agent Deborah Martin.

Sometime during the ride, Agent Martin received a telephone call on the cellular car phone. During that conversation, another FBI agent informed her that a handgun had been found at Payne's residence during the execution of the search warrant. Sometime thereafter, Agent Martin said to Payne, "They found a gun at your house." Payne responded, "I just had it for my protection." Appellant has not alleged that Agent Martin or other FBI personnel made any other statements to him regarding the charges he faced or the evidence against him.

Appellant was charged with drug and weapons offenses under 21 U.S.C. §§ 841 and 845 and 18 U.S.C. § 922(g). Before trial, Payne moved, *inter alia*, for suppression of his statement on the grounds that it resulted from interrogation in violation of his *Miranda* rights and his Sixth Amendment right to counsel. At a pre-trial hearing, both Agent Martin and appellant testified concerning the circumstances of the conversation in the car. The district court ruled that Agent Martin's statement to appellant—that the FBI found a gun at his house—was not the functional equivalent of interrogation and therefore denied appellant's motion to suppress.

After suppression of the statement was denied, appellant admitted his guilt on four of the five counts charged, including the weapons count. The jury convicted him on all counts. Appellant then filed a timely notice of appeal, presenting numerous assignments of error.

## II.

### A.

The safeguards of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), are well-established, and we need not repeat them here. These safeguards come into play, however, only when the suspect is subject to "custodial interrogation." The Supreme Court defined "interrogation," for Fifth Amendment purposes, in *Rhode Island v. Innis*, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). In *Innis* the Court made clear that interrogation includes more than direct questioning:

> [T]he term "interrogation" under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. The latter portion of this definition focuses primarily upon the perceptions of the suspect, rather than the intent of the police.

*Id.* at 301, 100 S.Ct. at 1689–90 (footnotes omitted).

In *Innis*, the defendant was arrested for robbery with a sawed-off shotgun. When arrested, the defendant was unarmed. While he was in transit to the police station, two police officers conversed among themselves about the missing shotgun, with one officer ruminating to the other that "there's a lot of handicapped children running around in this area, and God forbid one of them might find a weapon with shells and they might hurt themselves." The defendant then interrupted the conversation and expressed a willingness to take the officers to the gun, which was recovered. *Id.* at 294–95, 100 S.Ct. at 1686–87. The Court held that the officers' conversa-

tion among themselves did not constitute interrogation for *Miranda* purposes. It relied on the facts "the entire conversation appears to have consisted of no more than a few offhand remarks," not a "lengthy harangue in the presence of the suspect"; that the officers' comments were not "particularly evocative"; and that there was no evidence "that the officers were aware that the [defendant] was peculiarly susceptible to an appeal to his conscience concerning the safety of handicapped children." *Id.* at 302–03, 100 S.Ct. at 1690.

### B.

■ The instant case involves a statement by a federal law enforcement officer that informed appellant that the FBI possessed certain inculpatory evidence. Payne suggests that any statement by an officer to a suspect that the police possess incriminating evidence is interrogation under *Innis* as a matter of law. However, the *Innis* definition of interrogation is not so broad as to capture within *Miranda*'s reach all declaratory statements by police officers concerning the nature of the charges against the suspect and the evidence relating to those charges.

For example, in *United States v. Jackson*, 863 F.2d 1168 (4th Cir.1989), after the defendant's protestations that he was not involved with drugs, a DEA agent responded, "Just think about Harry Payne," referring to the person to whom the defendant had allegedly delivered cocaine. The defendant's false exculpatory response that he did not know Harry Payne was introduced at trial. *Id.* at 1170–71. The court held that the DEA agent's statement did not constitute the functional equivalent of interrogation because there was no evidence that the agent "knew or should have known that his brief response to [the defendant] would result in [his] false denial of knowledge." *Id.* at 1172–73. Also on point is *Shedelbower v. Estelle*, 885 F.2d 570 (9th Cir.1989). There, after the defendant asked for a lawyer, a police officer told him that his accomplice had been arrested and that the victim had identified him as one of her assailants after being shown his photo-

graph. The defendant then confessed. *Id.* at 571–72. The Ninth Circuit held that the officer's comments were not interrogation within the meaning of *Innis*. *Id.* at 573. Other cases are similar. *See, e.g., Plazinich v. Lynaugh*, 843 F.2d 836, 840 (5th Cir.1988); *United States v. Crisco*, 725 F.2d 1228, 1230–32 (9th Cir.1984); *United States v. Thierman*, 678 F.2d 1331 (9th Cir.1982); *United States v. Bennett*, 626 F.2d 1309, 1312–14 (5th Cir.1980).

Although the Supreme Court has not directly addressed this question, there are indications that mere declaratory descriptions of incriminating evidence do not invariably constitute interrogation for *Miranda* purposes. In *Arizona v. Roberson*, 486 U.S. 675, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988), the Court held that once a suspect invokes his *Miranda* rights in an investigation of one crime, the police may not interrogate him regarding another crime until counsel has been provided. *Id.* at 680–88, 108 S.Ct. at 2097–2101. The Court noted, however, that "[the police] are free to inform the suspect of the facts of the second investigation as long as such communication does not constitute interrogation." *Id.* at 687, 108 S.Ct. at 2101. If providing such information need not constitute interrogation in the circumstances of two investigations, we discern no reason why the rule would be any different when a suspect is the subject of only one investigation.

That no comment on the evidence in a case will ever issue in the presence of a criminal suspect seems to us neither realistic nor desirable as an absolute rule derived from the Fifth Amendment. Indeed, it may even be in the interest of a defendant to be kept informed about matters relating to the charges against him. Here, for example, Agent Martin had informed Payne that the government was going to search his residence and permitted him to call his family in order to minimize their apprehension. Information about the evidence against a suspect may also contribute to the intelligent exercise of his judgment regarding what course of conduct to follow. *Crisco*, 725 F.2d at 1232.

We thus reject appellant's argument that statements by law enforcement officials to a suspect regarding the nature of the evidence against the suspect constitute interrogation as a matter of law. It simply cannot be said that all such statements are objectively likely to result in incriminating responses by those in custody. The inquiry mandated by *Innis* into the perceptions of the suspect is necessarily contextual, *Nelson v. Fulcomer,* 911 F.2d 928, 934 (3d Cir.1990), and whether descriptions of incriminating evidence constitute the functional equivalent of interrogation will depend on circumstances that are too numerous to catalogue. As a result, substantial deference on the question of what constitutes interrogation must be paid to the trial courts, who can best evaluate the circumstances in which such statements are made and detect their coercive aspects.

■ It remains for us to review the application of the *Innis* definition to the circumstances of this case. Appellant argues that Agent Martin's statement to him constituted interrogation under *Innis* because, from his position, "a statement that the police found a gun in his house called for an exculpatory response." We disagree. As the district court found, Agent Martin's statement "was not one that sought or required a response." Officers "surely cannot be held accountable for the unforeseeable results of their words or actions," *Innis,* 446 U.S. at 301–02, 100 S.Ct. at 1690, and we cannot conclude that Agent Martin "should have known" that her statement, which was the only discussion of the charges or evidence against appellant, was "reasonably likely to elicit an incriminating response." *Id.* at 302, 100 S.Ct. at 1690. Moreover, Payne "was not subjected to compelling influences, psychological ploys, or direct questioning." *Arizona v. Mauro,* 481 U.S. 520, 529, 107 S.Ct. 1931, 1936–37, 95 L.Ed.2d 458 (1987). Thus, we agree with the district court that the rather innocuous statement at issue here did not constitute interrogation and should not result in the sanction of suppressing relevant and probative evidence.

## III.

■ In addition to his Fifth Amendment claim, appellant further argues that Agent Martin's statement violated his Sixth Amendment right to counsel which, once invoked, protects a suspect against the deliberate elicitation of incriminating statements in the absence of his attorney. The purpose of the Sixth Amendment right to counsel differs in significant respects from that of the right to counsel derived from the Fifth Amendment's guarantee against self-incrimination. The Sixth Amendment functions to " 'protec[t] the unaided layman at critical confrontations' with his 'expert adversary,' the government, *after* 'the adverse positions of government and defendant have solidified' with respect to a particular alleged crime." *McNeil v. Wisconsin,* — U.S. —, 111 S.Ct. 2204, 2208–09, 115 L.Ed.2d 158 (1991) (quoting *United States v. Gouveia,* 467 U.S. 180, 189, 104 S.Ct. 2292, 2298, 81 L.Ed.2d 146 (1984)). In contrast, the Fifth Amendment "protect[s] a quite different interest: the suspect's 'desire to deal with the police only through counsel.' " *Id.* 111 S.Ct. at 2209 (quoting *Edwards v. Arizona,* 451 U.S. 477, 484, 101 S.Ct. 1880, 1885, 68 L.Ed.2d 378 (1981)). Thus, the Fifth Amendment applies whenever the defendant is subject to custodial interrogation, *Edwards,* 451 U.S. at 482, 101 S.Ct. at 1883, whereas the Sixth Amendment right attaches only " 'at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.' " *Gouveia,* 467 U.S. at 188, 104 S.Ct. at 2297 (quoting *Kirby v. Illinois,* 406 U.S. 682, 689, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411 (1972) (plurality opinion)).

Payne bases his Sixth Amendment argument on the fact that his May 2 arrest technically was in connection with a previous conviction for income tax evasion, for which he retained counsel. Payne's argument, however, misconstrues the nature of the Sixth Amendment right to counsel. As the Supreme Court recently made clear, "[t]he Sixth Amendment right ... is offense-specific. It cannot be invoked once for all future prosecutions, for it does not

attach until a prosecution is commenced." *McNeil,* 111 S.Ct. at 2207. Any invocation of Payne's Sixth Amendment right to counsel with respect to the tax offenses thus does not extend to the drug and weapons offenses, for which no Sixth Amendment right to counsel had yet attached. And even if his May 2 arrest technically related to the tax offenses, the Sixth Amendment did not limit the FBI's authority with respect to other crimes. *See id.* at 2207–08; *see also Maine v. Moulton,* 474 U.S. 159, 179–80 & n. 16, 106 S.Ct. 477, 489 & n. 16, 88 L.Ed.2d 481 (1985) ("Incriminating statements pertaining to other crimes, as to which the Sixth Amendment right has not yet attached, are, of course, admissible at a trial of those offenses."). We conclude, therefore, that Payne's Sixth Amendment argument is without merit.

### IV.

We have reviewed appellant's other assignments of error and likewise consider them to be without merit.* The judgment of the district court therefore is

AFFIRMED.

---

\* We briefly address appellant's claim that the prosecutor's reference to sentencing during his closing argument to the jury was improper and should have resulted in a mistrial. Appellant admitted his guilt as to counts one, two, four, and five of the indictment but denied it as to count three. Count three charged an attempt to distribute in excess of 500 grams of cocaine. The United States had filed an information of enhanced penalty under 21 U.S.C. § 851 based on appellant's 1982 felony drug conviction; as a result, if convicted on count three, appellant's sentence on that count would have been doubled. In his closing argument, the prosecutor made the following statement to the jury:

> You decide how much credibility, if any, to give what the defendant told you yesterday....
>
> [Y]ou can consider the fact that the defendant has a very strong motive to lie. The defendant candidly admitted on the stand that he is aware that count three of the indictment is the most serious charge of the five charges against him.
>
> It carries, he concedes, the most serious penalties of any of the five charges against

him. And he admits and he says he is aware that, because of his prior drug conviction, if he is found guilty of count three, whatever sentence he gets on count three is going to be automatically doubled. He knows that.

The district court sustained appellant's objection to the prosecutor's reference to sentencing, but denied his motion for a mistrial.

We think it much the better practice for the government to stay clear of references to punishment altogether. Nonetheless, we discern no reversible error in the circumstances presented here for several reasons. First, the district court gave a strong mitigating instruction that clearly indicated to the jury that any consideration of possible punishment was improper. Second, the government's closing argument did not dwell on the punishment issue. Finally, the government's case as to count three was strong and rested on several recorded conversations during which appellant discussed the cocaine transaction that is the subject of the count. For all these reasons, we do not find reversible error on the particular facts presented by this case.