UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                No. 98-4300

CURTIS JAMES LAY,
Defendant-Appellant.

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Peter J. Messitte, District Judge.
(CR-97-313-PJM)

Submitted: June 8, 1999

Decided: June 29, 1999

Before HAMILTON and KING, Circuit Judges,
and BUTZNER, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

James Wyda, Federal Public Defender, Beth M. Farber, Chief Assis-
tant Federal Public Defender, Baltimore, Maryland, for Appellant.
Lynne A. Battaglia, United States Attorney, Andrew C. White, Assis-
tant United States Attorney, Rod J. Rosenstein, Assistant United
States Attorney, Greenbelt, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Curtis James Lay appeals the denial of two suppression motions and his sentence arising from his conviction for violations of 18 U.S.C.A. § 922(g)(1) (West Supp. 1999), possession of ammunition by a convicted felon, and 21 U.S.C. § 841(a)(1) (1994), possession with intent to distribute cocaine base. We find no reversible error with regard to the suppression rulings or the sentence and affirm.

In July, 1997, a warrant was issued for Lay's arrest for a 1994 murder in the District of Columbia. On August 7, 1997, police officers attempted to execute the warrant on Lay at his residence in Maryland. After Lay opened the door in response to the officers' knocks, he was ordered to lie on the floor and asked whether anyone else was in the premises. When he failed to respond, the officers conducted a protective sweep of the entire one-bedroom apartment. As part of the sweep, an officer opened a large locker in the bedroom and discovered crack cocaine and a large number of baggies of the sort commonly used to package drugs. Ammunition and a pistol cleaning kit were discovered in plain view on the top shelf of the locker.

On August 12, Lay was brought to the office of a District of Columbia homicide detective. After being given a Miranda[1] warning and being informed he was charged with first-degree murder, he asked for a lawyer and the interview ended. As the detective was leaving the room, he informed Lay that he also had"some problems in Maryland," referring to the firearm, ammunition and narcotics found during the search of his apartment. Lay responded that he did not have problems in Maryland because "none of that stuff was in plain view and you didn't have a search warrant." This statement was introduced at Lay's federal trial.

_____

**1 Miranda v. Arizona**, 384 U.S. 436 (1966).

2

Prior to his trial on the federal firearms and drug charges, Lay moved to suppress both the fruits of the search and the statement to the detective. The motions were denied, and he was convicted following a jury trial. In sentencing Lay, the district court increased his criminal history from IV to VI on the ground that the higher category better reflected the seriousness of his past criminal activities and the likelihood of recidivism. This upward departure, in conjunction with an offense level of 34, yielded a sentencing range of 262-327 months; Lay received a 300-month prison sentence.

Lay asserts the court erred in denying his motion to suppress evidence obtained during the warrantless search conducted upon his arrest in his home. An exception to the requirement that a search warrant be obtained prior to the search of a person's home was articulated in Maryland v. Buie, 494 U.S. 325, 334 (1990):

> We also hold that as an incident to the arrest the officers could, as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched. Beyond that, however, we hold that there must be articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene.

Lay contends that the search of his home was legally deficient in three ways. First, he alleges the search of the bedroom itself was improper under Buie because the bedroom was neither"immediately adjoining" the area just inside the front door where the arrest took place nor was it otherwise situated such that "an attack could be immediately launched" therefrom by a confederate. Second, he asserts there were no articulable facts that would have warranted a reasonable belief that the apartment harbored another individual, particularly because the police surveillance of the apartment had not alerted them to another occupant. And third, Lay contends there was no showing that the locker could have harbored someone. Our rejection of the first contention obviates the need to address the others.

3

The basis of the court's suppression ruling was its finding that the arrest occurred in "a small apartment where effectively every room adjoins every other room." (J.A. 86). Lay's first argument has two related components. First, as a matter of law, the bedroom did not qualify as an "immediately adjoining room" because it did not have a direct entrance into the room in which the arrest took place. Second, the bedroom did not fit within Buie because, as a factual matter, it was not situated such that an attack could have been"immediately launched" into the living room. To the extent that the argument implicates factual findings of the district court, we construe the evidence "in the manner most favorable to the government," and we review the factual findings upon which a ruling denying the suppression is based for clear error. United States v. Han, 74 F.3d 537, 540 & n.1 (4th Cir. 1996).

The district court's ruling is amply supported by the evidence and is in accord with principles enunciated in Buie . One of the arresting officers testified that the distance from the front door through the living room to the bedroom door was fifteen feet. A diagram introduced at the suppression hearing showed that the bedroom did indeed share a wall with the living room but that the door to the bedroom opened into a hallway rather than directly into the living room. However, the same diagram reveals that someone exiting the bedroom would immediately have full view of the area of the arrest, as much or nearly as much as if the bedroom opened directly into the living room. The clear implication of the court's oral ruling is that the focus of Buie-- the possibility of sudden violence to police officers engaged in a dangerous task in unfamiliar territory--militates against the interpretation Lay proposes for the term "immediately adjoining area."

The contention that the search of the locker was illegal finds no support in the record. An officer testified that each half of the internally partitioned locker was "definitely big enough for someone to hide in." (J.A. 51). Inasmuch as the doors of the locker were closed when the officer entered the bedroom, there can be no question but that the locker comes within the ambit of Buie . We find no error in the court's denial of the motion to suppress the fruits of the search of the bedroom.

Lay also contends that the court erred in denying his motion to suppress a statement he made to a police officer in response to a com-

4

ment made by the officer after Lay invoked his right to counsel. In denying Lay's motion to suppress the statement, the district court stated that "there really was no interrogation going on" when the statement was made, and the court characterized the officer's comment as "someone was told why they were in custody, period." (J.A. 104). Lay argues that the officer's comment about Lay's "other problems in Maryland" constituted a violation of his right to remain silent. This argument is meritless.

Lay was in custody and had invoked his right to counsel at the time the statement was made, so he was entitled to the benefit of those procedural safeguards designed "to secure the privilege against self-incrimination." <u>Miranda</u>, 384 U.S. at 444. Once Lay asked for a lawyer, any responses to further interrogation were subject to suppression at trial. The question is whether the officer's statement that Lay "had some problems out in Maryland" is the "functional equivalent" of interrogation. <u>See Rhode Island v. Innis</u>, 446 U.S. 291, 300 (1980). In other words, was the officer's statement of a type that he should have known was "reasonably likely to elicit an incriminating response"? <u>Id.</u> at 301. We agree with the district court that it was not.

Similar statements have been found not to constitute an interrogation. <u>See, e.g.</u>, <u>Arizona v. Roberson</u>, 486 U.S. 675, 687 (1988) (explaining that even after a suspect has requested counsel, police "are free to inform the suspect of the facts of[a] second investigation as long as such communication does not constitute interrogation"); <u>see also United States v. Payne</u>, 954 F.2d 199, 202 (4th Cir. 1992) ("[T]he <u>Innis</u> definition of interrogation is not so broad as to capture within <u>Miranda</u>'s reach all declaratory statements by police officers concerning the nature of the charges against the suspect and the evidence relating to those charges."). Lay is unable to point to examples to the contrary.

In the absence of an invariable rule, "substantial deference on the question of what constitutes interrogation must be paid to the trial courts, who can best evaluate the circumstances in which such statements are made and detect their coercive aspects." <u>Payne</u>, 954 F. 2d at 203. We find no error in the court's ruling that the officer's remark did not violate Lay's right to remain silent.

As for Lay's sentencing claim, the probation officer calculated a criminal history category IV.**2** In granting the Government's motion for an upward departure, the court relied on three offenses that were not reflected in the calculation of Lay's criminal history. These included a murder that was connected to the kidnapping for which Lay was convicted, as well as two other arrests, both of which involved possession of narcotics and one of which also involved possession of a firearm. The district court departed from the criminal history category IV to category VI on the ground that category IV did not reflect the seriousness of Lay's past criminal conduct and the likelihood of recidivism. See USSG § 4A1.3. Lay contends that resentencing is required because the court's explanation of its reasons for departing were insufficiently detailed and, more particularly, that the court failed to specifically consider why the next higher criminal history category (V) was insufficient to remedy the perceived inadequacies of category IV.**3**

In United States v. Rusher, 966 F.2d 868, 883 (4th Cir. 1992), we vacated the sentence because the sentencing court failed to provide "specific reasons for departing." In an attempt to ensure meaningful review of future departures under USSG § 4A1.3, we adopted a procedure by which the district court must "refer first to the next higher category and . . . move on to a still higher category only upon a finding that the next higher category fails adequately to reflect the seriousness of the defendant's record." Id. at 884. Contrary to Lay's contention, however, the mere failure to specifically mention an intervening category does not automatically require a remand.

_____

**2** The criminal history category IV was based on 9 criminal history points: 3 for a 1991 conviction for conspiracy to kidnap (USSG § 4A1.1(a)); 3 for a conviction for failure to appear while on pretrial release (USSG § 4A1.1(a)); 2 because the instant offense was committed while Lay was on supervised release (USSG § 4A1.1(d)); and 1 because the instant offense was committed less than two years following Lay's release from custody on the failure-to-appear conviction (USSG § 4A1.1(e)).

**3** Lay does not assert that the evidence was insufficient to prove the Government's allegations regarding these offenses or that the extent of the departure was an abuse of discretion.

The level by level approach articulated in Rusher was later modified to permit direct departures to a career offender sentence if the court found that the defendant's criminal conduct was serious enough to warrant career offender treatment and the defendant's record included convictions that would otherwise be counted as predicate crimes under USSG § 4B1.1 but for their "constitutional invalidity." See United States v. Cash, 983 F.2d 558, 563 (4th Cir. 1992). In this situation, a "level by level consideration" is unnecessary. See id. at 562.[4] We conclude a specific level by level analysis is similarly unnecessary in this case.

We know precisely what conduct the district court considered in its departure decision--a drug-related murder, two instances of possession of distribution-quantity narcotics, and one instance of illegal possession of a firearm, none of which were accounted for in the criminal history calculation. A conviction on just one of the drug offenses or on the firearm offense would likely have brought the pre-departure calculation to 12 criminal history points[5] (the top of category V), and the murder would have clearly sufficed as the basis for departing to the next category. The court also explained its basis for finding a likelihood of recidivism when it noted that Lay was only twenty-four years old at the time of sentencing, had been involved with the criminal justice system "rather continuously" since his youth, and had continued to commit crimes even while on supervised release for earlier crimes. (J.A. 217). In this case, the specificity of the district court's explanation of its basis for departing permits meaningful review of the extent of the departure; it is not necessary for"the district court to ritualistically discuss each criminal history category it rejects." United States v. Lambert, 984 F.2d 658, 664 (5th Cir. 1993). We therefore find no error.

Accordingly, we affirm Lay's conviction and sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

_____

[4] The Government does not contend that the court departed pursuant to the de facto career offender method recognized in Cash.

[5] See USSG § 4A1.1(a).