**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 04-4385**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

WILLIAM LINWOOD FOSTER,

Defendant - Appellant.

---

**No. 04-4550**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

WARREN WILLIAMS,

Defendant - Appellant.

---

Appeals from the United States District Court for the District of
Maryland, at Baltimore.  J. Frederick Motz, District Judge.  (CR-
03-462-JFM)

---

Argued:  December 2, 2005          Decided:  January 19, 2006

---

Before WILKINSON and MICHAEL, Circuit Judges, and HAMILTON, Senior Circuit Judge.

———————————

Affirmed in part, vacated in part, and remanded in part by unpublished per curiam opinion.

———————————

**ARGUED:** Martin Gregory Bahl, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Baltimore, Maryland, for Appellants. Harry Mason Gruber, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee. **ON BRIEF:** James Wyda, Federal Public Defender, Denise C. Barrett, Assistant Federal Public Defender, Baltimore, Maryland; Bradley A. Goldbloom, SIEGEL & HYATT, L.L.C., Baltimore, Maryland, for Appellants. Allen F. Loucks, United States Attorney, Stephen M. Schenning, Assistant United States Attorney, Baltimore, Maryland, for Appellee.

———————————

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

The defendants, William Foster and Warren Williams, were convicted by a jury of various drug-related charges. Foster appeals the district court's denial of his motion to suppress his unwarned statements, alleging that their admission violates his Fifth and Fourteenth Amendment privilege against compelled self-incrimination. Foster and Williams both appeal their sentences on the ground that they are unconstitutional under United States v. Booker, 543 U.S 220, 125 S. Ct. 738 (2005). We affirm the district court's denial of Foster's motion to suppress on the ground that Foster was not under interrogation or its functional equivalent at the time that he made these statements. Finding Sixth Amendment error, we vacate Foster's sentence and remand for resentencing. We affirm Williams's sentence.

I.

On January 25, 2003, Sergeant John Ambrose and Lieutenant Leslie Banks of the Baltimore Police Department observed defendants Foster and Williams conduct an apparent drug sale. A woman approached the two men and handed Foster what appeared to be money; in exchange, Williams retrieved a small object from the rear passenger side of a car parked nearby and handed it to the woman. As soon as the woman, who was walking, left the immediate vicinity of the transaction, police officers stopped her and found in her

3

possession a yellow ziplock bag containing roughly .2 grams of cocaine base. Shortly thereafter, officers stopped Foster and Williams who had left in the car. With the two men detained on the sidewalk, Lieutenant Banks retrieved a plastic bag containing roughly one gram of cocaine base from behind the fuel cap of the car (on the rear passenger side) as well as $457 in small bills from the front console. Foster and Williams were then arrested and handcuffed.

Before the suspects were advised of their <u>Miranda</u> rights, Sergeant Ambrose said aloud, "I can't believe with all the money and drugs we found we didn't find a handgun." J.A. 27. According to Sergeant Ambrose, Foster replied, "If you want a gun I will get you a handgun." <u>Id.</u> Ambrose then said that "it would take four handguns with whatever you have here," meaning the seized evidence. <u>Id.</u> Foster replied, "I can get you one right now. I need to go in my car and go right around the corner and get you a nine millimeter." <u>Id.</u>; J.A. 163. This exchange occurred against the backdrop of a well-known Baltimore Police Department policy that may allow suspects to escape low-level drug charges if they turn guns over to the police. In any event, Ambrose searched the trunk of the car and found a nine millimeter buried in the wheel well. The car is jointly owned by Foster and his mother.

On October 9, 2003, Foster and Williams were indicted on several drug and firearms counts: conspiring to distribute cocaine

base in violation of 21 U.S.C. § 846 (Count One); distributing cocaine base in violation of 21 U.S.C. § 841 (Count Two); possessing cocaine base with intent to distribute in violation of 21 U.S.C. § 841 (Count Three); possessing a firearm after a prior felony conviction in violation of 18 U.S.C. § 922(g) (Count Six); and possessing a firearm in furtherance of drug trafficking in violation of 18 U.S.C. § 924(c) (Count Seven). Foster was also indicted on two additional counts, distributing cocaine base (Count Four) and possessing cocaine base with intent to distribute (Count Five), relating to a later alleged drug sale.

Foster filed a pretrial motion to suppress his two statements to Sergeant Ambrose. In the pretrial evidentiary hearing, Sergeant Ambrose at first denied discussing cooperation with Foster, but later conceded the possibility when defense counsel confronted him with a piece of paper bearing his name and phone number in his own handwriting, which he had handed Foster at the scene of the stop. Sergeant Ambrose testified that he only handed this paper to Foster <u>after</u> Foster had already volunteered the statements and <u>after</u> he had already found the gun in Foster's trunk. Crediting Sergeant Ambrose's testimony, the district court determined that Sergeant Ambrose had handed Foster the paper only after "[h]e obviously had a defendant who wanted to talk to him. . . . He actually by that time had the gun itself. So he had

5

a potential real live informant, somebody who already expressed the interest [in cooperating] on lesser evidence."  J.A. 134.

The district court ultimately denied Foster's motion to suppress on the ground that Ambrose's statements did not constitute interrogation or its functional equivalent under <u>Miranda</u>.  "[T]he whole conversation, as the evidence shows it happened, . . . wasn't a discussion [about cooperation], oh, by the way, if you have a gun let me know, I will take that to the State's Attorney and we'll see what we can do."  J.A. 142.  Ambrose's statements were only "smart-alec," "sarcastic," and "facetious," not genuine offers of cooperation.  J.A. 142.  As such, they did not constitute interrogation of an unwarned suspect in custody.  Furthermore, the court concluded that the note with the sergeant's name and number was not evidence that Sergeant Ambrose elicited Foster's incriminating statements by promising to help him, since Sergeant Ambrose handed Foster the paper only <u>after</u> finding the gun and as "he [was] leaving to take [Foster] to the paddy wagon."  J.A. 142.  The district court thus denied Foster's motion to suppress.

Foster and Williams were tried from March 15 to March 18, 2004.  The district court dismissed Count One of the indictment, conspiracy to distribute cocaine base, after the jury submitted a question on that count.  On March 18, 2004, the jury convicted Foster on all remaining counts in the indictment except Count Seven, possessing a firearm in furtherance of drug trafficking.

The jury convicted Williams on Counts Two and Three and acquitted him on Counts Six and Seven.

The district court sentenced Foster to 87 months' imprisonment and Williams to 51 months' imprisonment, applying the then-mandatory sentencing guidelines. See 18 U.S.C. § 3551 et seq. In calculating Foster's base offense level, the district court imposed a two-point enhancement based on a fact found by the court alone, not by the jury: that the gun that Foster possessed had previously been stolen. See U.S.S.G. § 2K2.1(b)(4). Foster objected to this enhancement on the ground that its factual predicate, the gun being stolen, was based on unreliable information. The court similarly enhanced Williams's offense level based on a fact not found by the jury: that the quantity of cocaine base attributable to Williams was at least one gram but less than two grams. Williams, however, did not object to the resulting enhanced offense level, stating that it was "the appropriate level in this case." J.A. 727.

Foster appeals the district court's denial of his motion to suppress his unwarned statements. Foster and Williams both appeal their sentences.

II.

A.

Foster argues that the district court erred by admitting his unwarned statements after determining that he was not under interrogation (or its functional equivalent) at the time that he made them. Under Miranda v. Arizona, "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." 384 U.S. 436, 444 (1966). These safeguards include the now-familiar Miranda warnings or their equivalent. See Rhode Island v. Innis, 446 U.S. 291, 297 (1980). Because, Foster argues, he was under custodial interrogation at the time but had received no Miranda warnings, his statements to Sergeant Ambrose should be suppressed. When reviewing the district court's denial of a suppression motion, we view the evidence in the light most favorable to the government, and we accept the court's factual findings unless they are clearly erroneous. See United States v. Hamlin, 319 F.3d 666, 671 (4th Cir. 2003). We review the district court's legal determinations de novo. See id.

B.

The parties agree that Foster was in custody when he made his statements to Sergeant Ambrose, since he was under formal

8

arrest at the time. See Stansbury v. California, 511 U.S. 318, 322 (1994) (defining custody for Miranda purposes). They also agree that Foster had not been advised of his Miranda rights. What the parties dispute is whether Foster was under interrogation at the time. According to Rhode Island v. Innis, a suspect is interrogated by the law enforcement officers when "subjected to either express questioning or its functional equivalent." 466 U.S. at 300-01. This "functional equivalent" language is meant to capture "interrogation environments" in which the suspect's will is subjugated to that of his examiner, undermining the privilege against self-incrimination. Id. at 299. A suspect is subjected to the "functional equivalent" of interrogation when the police use "words or actions . . . (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect," meaning any response that the prosecution may seek to introduce at trial. Id. at 301 & n.5. The Supreme Court cautioned, however, that the police "surely cannot be held accountable for the unforeseeable results of their words or actions." Id. at 301-02. The focus of this inquiry is primarily on the suspect's perceptions and not on the police officers' intentions. Id. at 301.

In Innis police officers arrested the defendant for robbery with a sawed-off shotgun but found him unarmed. While in transit to the police station, the officers had a "brief

9

conversation" with each other about the missing shotgun, which everyone in the car (including the defendant) heard. Innis, 446 U.S. at 294, 303. Referring to a nearby school for handicapped children, one officer said to another, "[I]t would be too bad if [a] little [handicapped] . . . girl . . . pick[s] up the gun, maybe kill[s] herself." Id. at 295. The defendant at this point interrupted the conversation and offered to show the officers where the gun was located. Id. The Court ruled that the officers' conversation among themselves did not constitute interrogation for Miranda purposes because the entire conversation consisted of "no more than a few offhand remarks" and was not "a lengthy harangue in the presence of the suspect." Id. at 303. The officers' comments, moreover, were not "particularly 'evocative.'" Id. Further, there was no evidence that the officers were "aware that the [defendant] was particularly susceptible to an appeal to his conscience concerning the safety of handicapped children." Id. at 302. For these reasons, the Court concluded that the officers should not have known that their conversation was reasonably likely to elicit an incriminating response from the defendant, and therefore did not subject the defendant to the functional equivalent of interrogation under Miranda. Id.

C.

The issue in this case is whether Sergeant Ambrose should have known that his two comments were reasonably likely to elicit an incriminating response from Foster. Because this inquiry is necessarily contextual, focusing primarily on the suspect's perceptions, we owe trial courts "substantial deference on the question of what constitutes interrogation," since trial courts "can best evaluate the circumstances in which such statements are made and detect their coercive aspects." United States v. Payne, 954 F.2d 199, 203 (4th Cir. 1992).

We examine Sergeant Ambrose's statements separately: the first said aloud in Foster's presence ("I can't believe with all the money and drugs we found we didn't find a handgun"); and the second said directly to Foster ("It would take four handguns with whatever you have here," meaning the seized evidence). J.A. 27. While the second statement presents a closer question than the first, we ultimately conclude that neither statement constitutes interrogation for Miranda purposes.

1.

The first statement is easily analyzed under Innis. Because it was only an isolated, offhand remark and not a "lengthy harangue in the presence of the suspect," Innis suggests that this statement does not constitute interrogation or its functional

11

equivalent. Innis, 446 U.S. at 303. The only complicating factor is whether Foster was "peculiarly susceptible" to statements of this kind, as discussed briefly in Innis. Id. at 302. There is at least some evidence in the record that the Baltimore Police Department has a well-known policy of allowing suspects to escape low-level drug charges if they turn over guns to the police. Even assuming that Foster was aware of this policy, however, it alone does not transform Sergeant Ambrose's off-the-cuff comment into the functional equivalent of direct questioning. The statement was only a glib characterization of the seized evidence; Sergeant Ambrose was expressing his surprise that he found no gun alongside the drugs and money. As we explained in Payne, "[T]he Innis definition of interrogation is not so broad as to capture within Miranda's reach all declaratory statements by police officers concerning the nature of the charges against the suspect and the evidence relating to those charges" -- or by extension the lack of evidence against the suspect (for example, the absence of guns). Payne, 954 F.2d at 202.

In Payne we held that an officer's statement to the defendant, "They [the FBI] found a gun at your house," did not constitute interrogation or its functional equivalent because the statement "was not one that sought or required a response." Payne, 954 F.2d at 201, 203 (internal quotation marks omitted). Because it was merely a declaratory statement of the charges or evidence

against the defendant, the officer should not have known that it was "'reasonably likely to elicit an incriminating response.'" Id. (quoting Innis, 446 U.S at 302).

As in Payne, Sergeant Ambrose's first statement is a mere description of the evidence (or lack thereof) against Foster. It did not indicate to Foster that cooperation would benefit him in any way. Cf. United States v. Montana, 958 F.2d 516, 518-19 (2d Cir. 1992) (finding that agent's unsolicited statement to suspect that any cooperation would be brought to federal prosecutor's attention constituted interrogation); United States v. Johnson, 812 F.2d 1329, 1331 (11th Cir. 1990) (noting that police offers to help defendants may constitute interrogation, for example suggesting, "[We] will be good if [you] the accused will be good" or "Why don't you be good and tell us about it?"). Even when viewed against the backdrop of the Baltimore Police Department policy, Sergeant Ambrose's offhand remark cannot fairly be seen as expressing or even insinuating that he would help Foster bargain down his drug charges if only Foster cooperated.

For these reasons, we conclude that Sergeant Ambrose should not have known that his first statement was reasonably likely to elicit an incriminating response from Foster. We thus affirm the district court's denial of Foster's motion to suppress his first response, "If you want a gun I will get you a handgun." J.A. 27.

13

2.

Sergeant Ambrose's second statement requires more extensive analysis. This statement comes closer to interrogation than the first because it suggests more openly that Foster could benefit by cooperating, in particular by turning over several guns. Police statements that expressly state or even insinuate that cooperation would benefit the defendant may constitute interrogation under Miranda. See Montana, 958 F.2d at 518-19; Johnson, 812 F.2d at 1331.

In this analysis, we are bound by the court's factual findings unless they are clearly erroneous, as noted above. See Hamlin, 319 F.3d at 671. The district court made the following factual findings that are highly relevant to our examination here: that Sergeant Ambrose's second remark was "facetious," "smart-alec," and "sarcastic" only (that is, "it will take a lot more than one gun"), not a genuine offer of cooperation; and that Sergeant Ambrose gave Foster the piece of paper bearing his name and number only after Foster had already volunteered the incriminating statements, at which point Sergeant Ambrose "[knew] that he may have a potential cooperator . . . and [so he gave Foster] his name as he [was] leaving to take [Foster] away in the paddy wagon." J.A. 142. In sum, the district court concluded that "the whole conversation, as the evidence shows it happened, . . . wasn't a discussion, oh, by the way, if you have a gun let me know, I will

14

take that to the State's Attorney and we'll see what we can do." Id. Upon reviewing the record, we do not regard these findings as clearly erroneous and therefore accept them as true. See, e.g., J.A. 55-58 (evidence supporting court's findings).

In light of these factual findings, Sergeant Ambrose's second statement was not objectively likely to elicit Foster's incriminating response. Sergeant Ambrose was merely expressing sarcasm and incredulity because of the degree of trouble Foster was already in on account of the drugs; Ambrose had no apparent intention of helping Foster avoid or reduce the impending drug charges. Focusing primarily on the suspect's perceptions, as Innis instructs us to do, Foster could not reasonably have interpreted Sergeant Ambrose's second statement as a genuine offer to bargain down the charges in exchange for guns, even assuming that Foster knew about the police department policy of sometimes dropping charges for guns. See Innis, 446 U.S. at 301. As the district court found, Sergeant Ambrose's tone was too sarcastic and incredulous to interpret it as a genuine offer.

We therefore conclude that Sergeant Ambrose's second statement objectively invited no cooperation from Foster. Indeed, it invited no reply at all. It was a gibe only, an evidently "smart-alec" and "facetious" statement. J.A. 142. As such, it "was not [a statement] that sought or required a response." Payne, 954 F.2d at 203 (internal quotation marks omitted). Nothing in

15

this record allows us to disregard the district court's factual findings about Sergeant Ambrose's tone and thereby reverse its legal conclusion, especially given the "substantial deference" we owe trial courts on what constitutes interrogation. Payne, 954 F.2d at 203. Accordingly, we conclude that Sergeant Ambrose should not have known that his second statement was reasonably likely to elicit an incriminating response. On this ground, we affirm the district court's denial of Foster's motion to suppress his second response, "I can get you one right now. I need to go in my car and go right around the corner and get you a nine millimeter." J.A. 27, 163.

III.

We turn now to the defendants' challenges to their sentences. Foster and Williams both argue that their sentences are unconstitutional under United States v. Booker, 543 U.S. 220, 125 S.Ct. 738 (2005). Because neither defendant raised this issue below, we review their sentences for plain error. See United States v. Hughes, 401 F.3d 540, 547 (4th Cir. 2005).

Under Booker sentence enhancements imposed under a mandatory sentencing regime violate the Sixth Amendment if they are based on facts found by the court alone, not by the jury or by the defendant's admission. Booker, 125 S.Ct. at 756. If a defendant's actual sentence exceeds the maximum authorized by the facts

16

admitted by the defendant or proven to the jury beyond a reasonable doubt, it constitutes plain and prejudicial Sixth Amendment error. See Hughes, 401 F.3d at 547-49, 555-56. As such, it warrants remand and resentencing according to Booker's remedial scheme. Id. at 555-56; Booker, 125 S.Ct. at 764-68. Applying this framework, we conclude that Foster's sentence constitutes plain Booker error but that Williams's sentence does not.

## A.

In sentencing Foster, the district court relied on a fact found by the court alone, not by the jury: that the gun Foster possessed had previously been stolen. See U.S.S.G. § 2K2.1(b)(4). This fact enhanced Foster's base offense level by two points, from 20 to 22. The resulting guidelines range, given Foster's criminal history category of V, was 77 to 96 months; the range authorized by the jury verdict alone was 63 to 78 months. U.S.S.G. Ch. 5, Pt. A. Foster was ultimately sentenced to 87 months. Because Foster's sentence exceeded the maximum authorized by the jury verdict alone, it constitutes plain and prejudicial Sixth Amendment error and warrants resentencing. See Hughes, 401 F.3d at 555-56.

On remand the district court should first calculate the appropriate sentencing range under the guidelines and then consider this range, along with other factors enumerated in 18 U.S.C. § 3553(a), when imposing a sentence. See Hughes, 401 F.3d at 546.

17

The sentence must be "within the statutorily prescribed range and . . . reasonable." Id. at 547. If the sentence falls outside the guidelines range, the court should explain its reasons for departure as required under 18 U.S.C. § 3553(c)(2). See id. at 546.

## B.

In sentencing Williams, the district court relied on a fact contained in his presentence report that was not contained in the indictment: that Williams's offense involved at least one gram but less than two grams of cocaine base. The indictment did not charge any specific drug weight, and the jury made no findings regarding drug weight. The court-found drug weight enhanced Williams's base offense level by six points, from 12 to 18. A base offense level of 18, when combined with Williams's criminal history category of V, yields a range of 51 to 63 months; a base offense level of 12 (for an unspecified quantity of cocaine base, that is, less than .25 grams) yields a range of 27 to 33 months. U.S.S.G. §§ 2D1.1(c)(11), (14); U.S.S.G. Ch. 5, Pt. A. Williams was ultimately sentenced to 51 months.

At sentencing, Williams admitted to the drug weight that the court used to enhance his base offense level by stating that "18 is the appropriate offense level in this case." J.A. 727. He had no objection to "the way Probation added [Williams's] offense

18

level." J.A. 727. Williams thereby converted a court-found fact into one that he admitted.

In light of this admission, Williams's sentence was not enhanced based on a fact found by the court alone; it did not exceed the maximum authorized by facts admitted by the defendant or established by the jury verdict. Accordingly, we conclude that Williams's sentence was not Sixth Amendment error under <u>Booker</u>. <u>Booker</u>, 125 S.Ct. at 756; <u>see also</u> <u>United States v. Evans</u>, 416 F.3d 298, 300-01 (4th Cir. 2005). We thus affirm Williams's sentence.


IV.

We affirm the district court's denial of Foster's motion to suppress his unwarned statements. We vacate Foster's sentence and remand for resentencing, but affirm Williams's sentence.


<u>AFFIRMED IN PART,</u>
<u>VACATED IN PART,</u>
<u>AND REMANDED IN PART</u>