UNITED STATES of America

v.

Gloria Margarita MEDRANO.

No. DR 02–CR–1351WWJ.

United States District Court,
W.D. Texas,
Del Rio Division.

June 20, 2002.

Robert E. Cajena, Asst. U.S. Attorney, for plaintiff.

Frances Rowse Cusack, Asst. Federal Public Defender, for defendant.

## MEMORANDUM OPINION and ORDER

JUSTICE, Senior District Judge.

Defendant in the above-entitled and numbered criminal action moves for the suppression of any and all statements seized from the defendant at two separate interviews. For the following reasons, the defendant's motion will be granted in part and denied in part.

### FACTUAL SUMMARY

On October 17, 2001, at approximately 3:45 p.m., the defendant approached primary United States Customs Inspection at Bridge Two of the Eagle Pass, Texas Port of Entry. She was driving a maroon Chrysler LeBaron convertible, with her child in the passenger seat. According to Roberto Salinas, Senior Customs Inspector, the defendant at first made good eye contact and answered all of his questions, but then began to act suspiciously, answering questions evasively, and making poor eye contact. When asked about who owned the car, she stated that it belonged to her brother, and that she borrowed it from him "occasionally." At this point, the inspector asked her to open the trunk of her vehicle. Upon inspecting the trunk and the compartment holding the convertible top, Salinas decided to send the defendant to secondary inspection, and asked agents there to inspect the convertible top compartment, in which he detected a "discrepancy."

At secondary inspection, the defendant was met by Customs Inspector Ramon Salinas. He asked the defendant routine questions, including where she came from, where she was going to, and who owned the car. She answered that she was coming from Mexico, going to Eagle Pass, and

that the car belonged to her brother. It took Salinas less than one minute to inspect the compartment in question, with the assistance of Inspector Salvador Garza. Garza found 71.56 pounds of marijuana concealed within a false compartment behind the back seat of the car. The defendant and her son were then escorted to the on-site Immigration and Naturalization Service (INS) office in order to verify the immigration status of the defendant's son. On the way to the INS office, Inspector Garza again asked the defendant who owned the car; again, she stated that the car belonged to her brother. Her child was taken away from her, and she was placed in a holding cell.

Between 30 and 45 minutes later, United States Customs Service Special Agent David Henderson arrived to interview the defendant, having been alerted to the discovery of the marijuana, as well as to the defendant's assertions that the car belonged to her brother. Upon arriving, Special Agent Henderson gathered biographical information from the defendant, including her name, date of birth, citizenship, height, and weight. He also asked her for information about her family, in response to which he was told that the defendant had a 15 year-old brother. Henderson replied that he found it "unusual" that her 15 year-old brother owned a car, and the defendant responded that the car actually belonged to a "friend." After gathering this information, Henderson informed the defendant that narcotics had been found in the car, and informed her of her *Miranda* rights. The defendant signed that she understood her rights, asserted that she wished to remain silent because she was "afraid for her safety," and that she wanted to consult with an attorney. Questioning then ceased.

The defendant was charged by criminal complaint with a violation of 21 U.S.C. § 952, which prohibits the importation of marijuana. On October 25, 2001, the Honorable Dennis G. Green, United States Magistrate Judge, dismissed the criminal complaint for lack of probable cause.

Based upon the defendant's October conduct, on March 8, 2002, the grand jury indicted the defendant for a violation of 21 U.S.C. § 952 (as before, prohibiting the importation of marijuana), and for a violation of 21 U.S.C. § 841, prohibiting the possession of marijuana with intent to distribute. A warrant for the defendant's arrest was issued, and on March 10, 2002, Special Agent Henderson again apprehended the defendant at the Eagle Pass Port of Entry. He told her that he would be willing to help her out if she would help him, and again apprised her of her rights under *Miranda*. He emphasized that he was a man of his word, and, according to the defendant, promised to help secure her release the next day so that she could get to her job, and thereby not be in jeopardy of losing it. The defendant was clear that the decision about whether or not to release her was up to a judge, but thought that the agent could and would help her. This time, she chose to waive her rights orally and in writing. She stated that the car did not belong to her brother, that it belonged to a man named Elias Almendarez.

### Legal Analysis

#### A. The October 17, 2001 Interview

 The defendant first moves to suppress statements made during the October 17, 2001 interview, as having been elicited in violation of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). To validly obtain statements from custodial interrogation of a defendant, an agent must inform the defendant of her "*Miranda* rights" as a "prerequisite to interrogation" and the defendant must then voluntarily waive those rights for the interrogation to commence. *Miranda,* 384

U.S. at 471. A custodial interrogation is one "initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom in any significant way." *Id.* at 444. However, "routine biographical questions, such as inquiries about a defendant's social security number, address, date of birth, etc." are not "interrogation." *U.S. v. McQuagge,* 787 F.Supp. 637, 659 (E.D.Tex.1991). Further, police statements that are part of a spontaneous colloquy initiated by the defendant and that are immediately prompted by a statement of the defendant are not interrogation." *Id.*

■ As a preliminary matter, there can be no doubt that, on October 21, the defendant was sufficiently "in custody" to warrant the protections of *Miranda,* as no reasonable person in her circumstances would have felt free to leave. *See Orozco v. Texas,* 394 U.S. 324, 89 S.Ct. 1095, 22 L.Ed.2d 311 (1969). That does not mean, however, that all of the statements she made before being apprised of her rights under *Miranda* are subject to suppression. Here, the court's attention is called to two statements: (1) Ms. Medrano's statement that her car belonged to a "friend"; and, (2) her later statement that she was "afraid for her safety."

■ During the course of collecting biographical information from the defendant, Agent Henderson, on learning that the defendant had a 15 year-old brother, responded that he found it "unusual" that her 15 year-old brother owned a car. To this, Ms. Medrano replied that the car belonged to a "friend." "[T]he *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent." *Rhode Island v. Innis,* 446 U.S. 291, 300–01, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). The functional equivalent of interrogation includes "any words or actions on the part of the police ... that the police

should know are reasonably likely to elicit an incriminating response from the suspect." *Id.* at 301. It is, indeed, unusual that a 15 year-old boy would own a car. Given that ownership of the vehicle is an integral fact in a criminal action involving the importation of marijuana using that vehicle, Agent Henderson certainly should have realized that his skeptical remark about the defendant's brother was likely to evoke an incriminating response. Defendant's reply that the car belonged not to her brother, but to a "friend," was just such a response. When Agent Henderson made his remark about the defendant's brother, he crossed the line from simple collection of biographical information to the functional equivalent of interrogation. Because the defendant's statement that the car belonged to a friend was elicited in violation of *Miranda,* it will be suppressed.

■ By similar reasoning, the second statement under discussion—that the defendant was asserting her right to remain silent because she was "afraid for her safety"—was not elicited in violation of *Miranda.* "Volunteered statements of any kind are not barred by the Fifth Amendment[.]" *Miranda,* 384 U.S. at 478. Though the defendant was certainly in custody, her statement was not made as a result of interrogation. She was simply being asked if she wished to assert her rights to counsel and to remain silent, questions no reasonable person should have expected to elicit an incriminating response. Therefore, her voluntary, spontaneous declaration that she feared for her safety will not be suppressed.

### B. The March 10, 2001 Interview

■ The defendant next moves to suppress all statements made during her March 10, 2001 custodial interrogation as having been elicited in violation of the Sixth Amendment right to counsel. The

Sixth Amendment right to counsel attaches at the initiation of "adversary judicial proceedings." *Michigan v. Jackson,* 475 U.S. 625, 629–30, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986). This means "at least that a person is entitled to the help of a lawyer at or after the time that judicial proceedings have been initiated against him—'whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.'" *Brewer v. Williams,* 430 U.S. 387, 398, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977) (quoting *Kirby v. Illinois,* 406 U.S. 682, 689, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972)). In the instant action, the defendant's Sixth Amendment right to counsel attached, at the latest, on October 18, 2002, when the government filed its criminal complaint against her, charging her with a violation of 21 U.S.C. § 952, unlawful importation of marijuana. Even if dismissal of the criminal complaint against the defendant caused any sort of meaningful pause in Defendant's invocation of her Sixth Amendment right to counsel, "when there is a close nexus between the focus of a pre-indictment investigation and the ultimate charges brought in the indictment, a defendant's ongoing relationship with counsel that is known (or should be known) by the government invokes the Sixth Amendment right to counsel once that right attaches." *U.S. v. Harrison,* 213 F.3d 1206, 1213 (9th Cir.2000). That right attached as of the defendant's indictment on March 8, 2002. *Texas v. Cobb,* 532 U.S. 162, 167, 121 S.Ct. 1335, 149 L.Ed.2d 321 (2001); *McNeil,* 501 U.S. at 175. Much more than a "close nexus" exists between the focus of the government's pre-indictment investigation and the charges for which the defendant was eventually indicted. The entire thrust of the government's investigation was the defendant's alleged importation and possession of marijuana on October 17, 2001. Those are the crimes for which she was indicted on March 8, 2002.

Once the Sixth Amendment right to counsel has attached and has been invoked, "written waivers are insufficient to justify police-initiated interrogations." *Jackson,* 475 U.S. at 642. Thus, Defendant's written waiver, executed during the March interview, is insufficient to justify the interrogation initiated by Agent Henderson, as the very act of approaching the defendant outside the presence of her counsel violated her Sixth Amendment right to counsel. This is so even though the government added a count of possession with intent to distribute to its original charge of unlawful importation. The Supreme Court in *Cobb* held that the Sixth Amendment right to counsel attaches only to a charged offense, as well as to uncharged offenses that may be said to be the "same offense" under the so-called *Blockburger* test. *Cobb,* 532 U.S. at 173 ("'where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not'") (quoting *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932)). The holding of *Cobb,* however, is limited to cases in which the government interrogates a defendant regarding a crime as to which his or her Sixth Amendment right to counsel has not already attached of its own force, i.e., via indictment. Here, the defendant's Sixth Amendment right to counsel as to *both* crimes attached when the defendant was indicted on March 8, 2002, and that right was invoked as a matter of law by virtue of the defendant's ongoing relationship with her attorney, of which the government was well aware. *See Harrison,* 213 F.3d at 1213. Therefore, all statements, oral or written, made by the defendant during the

March 10, 2002 interview will be suppressed.[1]

### CONCLUSION

In summary, Defendant's motion to suppress her October 17, 2001 statement that the car belonged to a "friend," shall be, and is hereby,

**GRANTED.** Defendant's motion to suppress her October 17, 2001 statement that she was "afraid for her safety," shall be, and is hereby,

**DENIED.** Defendant's motion to suppress any and all oral and written statements seized on March 10, 2002— including, but not limited to, statements reflected in the agent's report, as well as Ms. Medrano's handwritten statement—shall be, and is hereby,

**GRANTED.**

---

1. Because the court finds that the defendant's statements were seized in violation of the Sixth Amendment, it does not reach the question of the voluntariness of the defendant's written waiver.