[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
May 19, 2005
THOMAS K. KAHN
CLERK

_____

No. 04-10480

_____

D. C. Docket No. 03-00085 CR-T-N-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

LEWIS MCKENZIE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

(May 19, 2005)

Before EDMONDSON, Chief Judge, TJOFLAT and KRAVITCH, Circuit Judges.

PER CURIAM:

Appellant McKenzie was convicted of violating federal drug laws. 21 U.S.C. § 844(a). The conviction rested, in part, on incriminating statements McKenzie made to an arresting officer before McKenzie was read his Miranda rights. On appeal, he alleges that the use of those statements at trial violated his rights under the Fifth Amendment to the United States Constitution. We disagree and affirm the conviction.

FACTS

On 5 February 2003, officers with the Alexander City Police Department in Alexander, Alabama executed a search warrant at McKenzie's residence. The warrant authorized a search for illegal drugs. Even though McKenzie was on electronic monitoring, he was not at home when officers arrived at his home. McKenzie's parents allowed the officers to enter and permitted them to search what was allegedly McKenzie's room. During the search, the officers discovered ammunition, marijuana and some cocaine residue.

One hour after the search began, McKenzie approached the house through the back yard. An officer saw McKenzie and placed him under arrest for failure to

pay child support. The parties agree that the arresting officer did not read McKenzie his <u>Miranda</u> rights. After being arrested, McKenzie continually talked to the officers, often in an abusive manner. In fact, the officers requested that McKenzie stop talking on numerous occasions.

Officer Turner testified at McKenzie's trial to the conversation at issue. The conversation occurred at McKenzie's house, after his arrest, but before he was read his <u>Miranda</u> rights:

Q.: "Did [McKenzie] make any statements to you?"

A.: "I asked him where he was at."

Q.: "And what did he reply?"

A.: "He advised, 'you police, you figure it out.'"

Q.: "What other statements did he make to you?"

A.: "I advised him that we found some marijuana and some cocaine, and he told me that he smoked marijuana and did I ever think he was a user or did I just figure he was a dealer."

Q.: "Did he say anything else to you?"

A.: "'Go mess with the folks on the lake. That's where all the real dope is.' He said if they called him right now and tested him, he would 'blow the machine up.'"

3

Q.:    "What did you take that to mean?"

A.:    "That he would be positive for narcotics at that time."

Based in part on this testimony, a jury convicted McKenzie for possession of cocaine in violation of 21 U.S.C. 844(a).  McKenzie now appeals that conviction.

DISCUSSION

We must determine whether McKenzie was interrogated in the constitutional sense, and whether the statements he made to Officer Turner were voluntary.  These questions present mixed ones of law and fact.  On review, we may substitute our "independent judgment after a review of the entire record." Cannady v. Dugger, 931 F.2d 752, 754 (11th Cir. 1991).

The Supreme Court has said that the Fifth Amendment prohibits an officer from interrogating an arrestee without reading that arrestee his so-called Miranda rights.  Miranda v. Arizona, 86 S. Ct. 1602, 1630 (1966).  This rule extends to the functional equivalent of an interrogation.  Rhode Island v. Innis, 100 S. Ct. 1682, 1689 (1980).  But, voluntary statements -- even those made without a Miranda reading -- are admissible.  Miranda, 86 S. Ct. at 1630.  Thus, if Officer Turner's

4

statements were part of an interrogation or its functional equivalent, then it was error to admit them unless McKenzie made them voluntarily.

We decide that Officer Turner did not interrogate McKenzie in the constitutional sense. About drugs, Officer Turner merely stated what was discovered in McKenzie's room; he did not ask McKenzie questions about the seized contraband. McKenzie's appeal, therefore, rests on whether the conversation was the functional equivalent of an interrogation.

The Supreme Court defined "functional equivalent" as "any words or actions on the part of police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." Innis, 100 S. Ct. at 1689-90. The focus of the inquiry is the perception of the suspect, not the intent of the police. Arizona v. Mauro, 107 S. Ct. 1931, 1935 (1987).

This Court has also considered whether a seizure involved an "unusual degree of force" to determine whether police partook in the functional equivalent of interrogation. United States v. Glen-Archila, 677 F.2d 809, 815 (11th Cir. 1982). And, we previously said that a "police arrest or seizure [is not, by itself] so coercive [as to] transform a situation into one of functional interrogation." Id. See also United States v. Genao, 281 F.3d 305, 311 (1st Cir. 2002) (concluding

5

officer's statement: "We've got a problem here," did not constitute the functional equivalence of interrogation).

Our review of the record leads us to conclude that the conversation at issue was not the functional equivalent of an interrogation. We are not persuaded that Officer Turner should have known that by informing McKenzie of what officers found in McKenzie's room would illicit the response it did. In addition, the police did not use an unusual degree of force, or psychological tricks like those mentioned in Innis.[1] We also believe the statement was voluntary. See Genao, 281 F.3d at 311. That McKenzie continually talked with officers after being arrested and that he did so after being warned, though not with official Miranda language, to be quiet is undisputed.

Accordingly, the conviction is

AFFIRMED.

---

[1] Innis cited examples of coached witnesses in lineups, minimizing the moral seriousness of an offense, blaming the victim and reverse lineups as psychological "ploys" used by the police to obtain incriminating statements. 100 S. Ct. at 1689.