

NUMBER 13-12-00374-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

THE STATE OF TEXAS,                                            Appellant,

v.

JOHNNIE LYNN OWEN,                                            Appellee.

## On appeal from the 105th District Court of
## Kleberg County, Texas.

# MEMORANDUM OPINION

### Before Justices Garza, Benavides and Perkes
### Memorandum Opinion by Justice Garza

By a single issue, the State of Texas appeals the trial court's order granting a

motion to suppress filed by appellee Johnnie Lynn Owen.[1]  Because we conclude that

---

[1] We note that the appellee is referred to variously throughout the record as "Owen" and "Owens." However, on documents bearing his signature, appellee signed as "Owen."

the trial court erred in granting Owen's motion to suppress, we reverse the trial court's order and remand for further proceedings.

## I. BACKGROUND

On May 17, 2010, pursuant to a plea bargain agreement, Owen pleaded guilty to aggravated assault causing serious bodily injury, a second-degree felony offense, and was sentenced to ten years' imprisonment. *See* TEX. PENAL CODE ANN. § 22.02(a)(1), (b) (West, Westlaw through 2013 3d C.S.). The sentence was suspended, and Owen was placed on community supervision for ten years.

On May 24, 2011, the State filed a motion to revoke, alleging five violations of Owen's community supervision, including possession of and conspiracy to distribute marihuana, assault of a family member, failure to report, and failure to pay supervision fees. A warrant for Owen's arrest was issued on May 25, 2011. Owen hired counsel to represent him on the motion to revoke. On June 13, 2011, Captain J.D. Longoria of the Kleberg County Sheriff's Department arrested Owen on the outstanding warrant.

Sergeant Tim Camarillo of the Kleberg County Sheriff's Department testified at the suppression hearing that on June 16, 2011, he conducted an investigation at the home of Owen's mother, where Owen, his girlfriend Elizabeth Alegria, and their young child had been staying in a back bedroom. Alegria and Owen's mother consented to a search of the bedroom by Sergeant Camarillo. In the bedroom, Sergeant Camarillo found various items associated with the use or manufacture of methamphetamine. That same day, Sergeant Camarillo conducted a videotaped interview with Owen. Sergeant Camarillo testified at the suppression hearing that he was told that Owen wanted to speak to an investigator. Owen's motion to suppress seeks the suppression of statements that he made during the interview.

On June 22, 2011, the State filed its first amended motion to revoke, in which it added new allegations of "Possession/Transporting Chemical with Intent to Manufacture," "Abandon/Endanger Child Criminal Negligence," and refusal to submit to a drug test, all allegedly occurring on June 13, 2011. On September 14, 2011, the State filed its second amended motion to revoke, which did not differ significantly from the June 22, 2011 motion. On November 8, 2011, the State filed its third amended motion to revoke, in which it alleged a new offense, possession of cocaine, alleged to have occurred on June 13, 2011. Finally, on December 14, 2011, the State filed an additional motion to revoke, in which it alleged conspiracy to manufacture methamphetamine on June 6, 2011, manufacture of methamphetamine on June 6, 2011, association with a person who manufactured methamphetamine, and use of methamphetamine on June 11, 2011.

On November 29, 2011, Owen filed a motion to suppress "[a]ny statements" that he made to law enforcement officers while in custody. The motion asserts that Owen's statements were "involuntary and were coerced and enticed"; that he did not knowingly waive his "right to counsel"; that his statements were taken in violation of article 38.22 of the code of criminal procedure, *see* TEX. CODE CRIM. PROC. ANN. art. 38.22 (West, Westlaw through 2013 3d C.S.); and that admission of his statements violates his rights under "the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, Article I, Section[s] 9 and 10 of the Texas Constitution and Articles 1.05 and 38.23 of the Texas Code of Criminal Procedure." *See* U. S. CONST. amends. IV, V, VI, XIV; TEX. CONST. art. I, §§ 9 & 10; TEX. CODE CRIM. PROC. ANN. arts. 1.05, 38.23 (West, Westlaw through 2013 3d C.S.).

On April 23, 2012, the trial court held a hearing on the State's December 14, 2011

motion to revoke.[2]  Owen pleaded "not true" to each of the State's allegations.  At the beginning of the hearing, Owen's counsel objected to the testimony of Captain Longoria regarding any statements Owen made to law enforcement officers and reminded the court that any such statements were the subject of Owen's pending motion to suppress.  The trial court stated that it would "carry" the motion to suppress.

Captain Longoria testified regarding Owen's arrest on June 13, 2011.  Captain Longoria stated that when he searched Owen's pockets, he found a "sniffer" and a small glass vial containing a white powdery substance, later determined to be a "trace amount" of cocaine.

Sergeant Camarillo testified regarding his investigation and search of the bedroom that Owen and Alegria shared with their young child.  Sergeant Camarillo described items found in the bedroom, including a "go bag for people who are doing meth or cooking methamphetamine" and various items associated with the use or manufacture of methamphetamine.  The State attempted to admit the video recording of Owen's interview with Sergeant Camarillo.  Owen's counsel objected, asserting that the interview was conducted in violation of Owen's rights because, even though Owen was represented by counsel in the revocation matter, counsel was not present at the interview.  The State argued that Owen waived his *Miranda* rights in writing at the beginning of the interview and stated that he had counsel for the motion to revoke but did not have counsel with respect to the new allegations of methamphetamine use.  The State argued that the Sixth Amendment right to counsel is "offense specific" and that Owen could therefore be questioned about the new methamphetamine-related offenses because they were

---

[2] Owen waived his right to have the allegations in the State's motion to revoke read in court.  The trial court described the motion as containing four counts.  The December 14, 2011 motion contains four counts.

4

unrelated to the allegations in the May 24, 2011 motion to revoke for which Owen was represented by counsel. The State cited *Romo v. State*, 132 S.W.3d 2, 4–5 (Tex. App.—Amarillo 2003, no pet.) in support of its argument. The State also cited *Pecina v. State*, 361 S.W.3d 68, 77–79 (Tex. Crim. App. 2012), in which the court of criminal appeals clarified the distinction between a Fifth Amendment right to counsel during custodial interrogation and a Sixth Amendment right to counsel and discussed both in the context of the U.S. Supreme Court's decision in *Montejo v. Louisiana*, 556 U.S. 778 (2009). The trial judge stated her intention to review the interview, requested additional briefing from the parties on the suppression issue, and concluded the hearing.

On April 30, 2012, the State filed an "answer" to Owen's motion to suppress. Again, the State argued that: (1) the Sixth Amendment is "offense-specific" and cited *Romo* as "on point"; (2) even if Owen had a Sixth Amendment right to counsel during the interview, he waived it by failing to request counsel at the beginning of the interview, citing *Pecina*; and (3) Owen waived any right to counsel by failing to clearly and unequivocally request counsel during the interview. No post-hearing brief by Owen's counsel appears in the record.

The trial court granted Owen's motion to suppress on May 23, 2012. The State requested findings of fact and conclusions of law, but no such findings or conclusions were filed. This appeal followed.

On June 4, 2013, this Court abated the appeal and ordered the trial court to issue findings of fact and conclusions of law. On November 18, 3013, the trial court filed its findings of fact and conclusions of law. On January 6, 2014, the State filed an amended brief in response to the trial court's findings and conclusions. Owen has not filed an amended brief.

Following a brief recitation of the facts and procedural history of the case, which are not in dispute, the trial court's findings and conclusions stated as follows:[3]

<u>Interview</u>

The interview which the Court hereby supplements to the record in this matter indicates the following:

1. When Sergeant Camarillo asked the Defendant if he had an attorney, Johnnie Owens advised Sergeant Camarillo he had an attorney for the "MTR and all that stuff, but if it was about anything else then, 'no'[.]"

2. Sergeant Camarillo did not tell Johnnie Owens what he wanted to talk to him about and began to question him.

3. The very first question Sergeant Camarillo asked Johnnie Owens dealt with his MTR and the allegations in his MTR. He questioned Johnnie Owens about his probation and his alleged violations.

4. Sergeant Camarillo asked Johnnie Owens about any new offenses like "cooking meth," or "dirty ua's."

5. Sergeant Camarillo asked Johnnie Owens about his rehab during probation and questions if he is currently using.

6. After this line of questioning, Johnnie Owens indicates he might give information but he indicates his probation officer Cindy Salinas is not helping him and he asks Sergeant Camarillo for help.

7. Johnnie Owens tells Sergeant Camarillo that he is in jail because he got "MTR'd again."

8. At one point during the interview, Sergeant Camarillo makes it clear to Johnnie Owens that the "guys could have gone to probation to snitch you out."

9. As Johnnie Owens begins to ask for help with a bond, Sergeant Camarillo makes phone calls to inquire about the status of the bond and confirms to Johnnie Owens that he is on a "no bond" for the MTR.

10. Sergeant Camarillo tells Johnnie Owens that he does not know the exact allegations on the MTR, but it is probably for having a dirty urinalysis or being somewhere he should not be.

---

[3] We note that the throughout the trial court's findings of fact and conclusions of law, Owen is referred to as "Owens."

6

11. Sergeant Camarillo then tells Johnnie Owens that he has "additional charges added to him" for manufacturing and endangering a child.

12. Sergeant Camarillo continues to ask Johnnie Owens to take a urine test and questions him about whether or not he will test "hot."

13. After further discussions to try and get Johnnie Owens to give information, Sergeant Camarillo specifically references that he understands Johnnie Owens may "need to get to rehab" again.

Factual and Legal Analysis

Johnnie Owens seeks to suppress all statements made during his interview on June 16, 2011 as having been elicited in violation of the Sixth Amendment right to counsel, as well as the Fifth and Fourteenth Amendments.

The Sixth Amendment right to counsel attaches at the initiation of "adversary judicial proceedings." *Michigan v. Jackson*, 475 U.S. 625, 629–30 (1986). This means a person is entitled to the help of a lawyer at or after the time that judicial proceedings have been initiated against him, whether by way of formal charge, preliminary hearing, indictment, information, or arraignment. *Brewer v. Williams*, 430 U.S. 387, 398 (1977). Once an accused has expressed his desire to deal with the police only through counsel he should not be subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication. *Edwards v. Arizona*, 451 U.S. 477, 484–85 (1981). A waiver of the Sixth Amendment right to counsel is valid only when it reflects an intentional relinquishment or abandonment of a known right or privilege. *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938).

Where there is a close nexus between the focus of a pre-indictment investigation and the ultimate charges brought in the indictment, a defendant's ongoing relationship with counsel that is known (or should be known) by the government invokes the Sixth Amendment right to counsel once that right attaches. *US. [v.] Medrano*, 208 F. Supp.2d 681, 686 [W.D. Tex.] 2002), citing *U.S. v. Harrison*, 213 F.3d 1206, 1213 (9th Cir. [2000]). Much more than a "close nexus" exists between the focus of the government's investigation and the charges which were added to his Motion to Revoke Probation and for which he was subsequently indicted.

The Supreme Court in *Cobb* held that the Sixth Amendment right to counsel attaches only to a charged offense, as well as to uncharged offenses that may be said to be the "same offense" under the so called *Blockburger* test. *Texas v. Cobb*, 532 U.S. 162, 173 [2001]. The *Blockburger* test indicates that where the same act or transaction

7

constitutes a violating of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not. *Blockburger v. United States*, 284 U.S. 299, 304 (1932). The holding of *Cobb* is limited to cases in which the government interrogates a defendant regarding a crime as to which his or her Sixth Amendment right to counsel has not already attached of its own force, i.e., via indictment. Once the Sixth Amendment right to counsel has attached and has been invoked, "written waivers are insufficient to justify police initiated interrogations." *Jackson*, 475 U.S. at 642.[4]

The pragmatic approach the Courts seem to have taken with regard to analyzing Sixth Amendment issues is to ask what purpose a lawyer could serve at the particular state of the proceedings in question, and what assistance he could provide to an accused at that stage. *Patterson v. Illinois*, 487 U.S. 285, 298 (1988). In addition, it is important to note the dangers to the accused of proceeding without counsel. *Id.* An accused's waiver of his right to counsel is "knowing" when he is made aware of these basic facts. *Id.*

The new charges were not indicted at the time of the interview, but were currently pending in terms of "cases" or anticipated "charges." Therefore, Sixth Amendment rights had not attached yet.

With regard to the alleged new offense of manufacturing methamphetamine, this new offense was added as an allegation to his existing Motion to Revoke Probation within a few days of his interview with Camarillo, and were subsequently indicted.

In this particular case, the Defendant Johnnie Owens was in custody pursuant to a Motion to Revoke his Probation. In other words, formal adversary proceedings against the Defendant had commenced. The State by filing the motion to revoke had committed itself to prosecute and formalized its adversarial position with respect to the defendant. *Kirby v. Illinois*, 406 U.S. 682, 689 (1972). He had already retained an attorney related to that revocation motion on file. He was facing probation revocation and possibly prison time. The Defendant specifically told Sergeant Camarillo that he had an attorney and had an attorney for the "mtr and all that stuff." It is clear from the record and the testimony during trial that Sergeant Camarillo was aware of the motion to revoke as his entire line of questioning was directly related to the Defendant's Motion to Revoke. In fact, the very first question Sergeant Camarillo asked the Defendant was related to his motion to revoke. Motions to Revoke Probation are customarily amended to add new allegations. Sergeant Camarillo

---

4 We note that the U.S. Supreme Court expressly overruled *Michigan v. Jackson* in *Montejo v. Louisiana.* 556 U.S. 778, 797 (2009).

8

consistently brought up the Defendant's probation, his violations, and drug issues. He further tried to get him to admit that he would test positive for drugs which would be an additional violation. This is the danger to Johnnie Owen at this stage of the proceedings which was not made aware to him, that his Motion to Revoke could be amended and all the information being provided, could be used against him in his probation case. An attorney would have more than likely advised the defendant not to answer any questions.

It is also important to note that Sergeant Camarillo did not advise the defendant about the reason he was being questioned until well after the Admonishments and Waivers had been signed. The defendant asked numerous times as to the reason he was being questioned. How can any waiver be knowingly, intelligently, and voluntarily entered into when adversarial proceedings had already begun, the defendant had an attorney, and no one told him why he was being questioned[?]

Therefore, with regard to the Motion to Revoke probation, his Sixth Amendment right to counsel had attached and that right was invoked as a matter of law by virtue of the defendant's ongoing relationship with his attorney. Any alleged waiver is insufficient to justify the interrogation initiated by Sergeant Tim Camarillo, as the very act of approaching the defendant outside the presence of her counsel violated his Sixth Amendment right. Law enforcement should respect the accused's choice to seek counsel and should not act in a manner that dilutes the protection afforded by the right.

Although it is the State's position that the Defendant was being questioned on other charges, not yet alleged in the motion to revoke, it was clear that the interview was being used to gather information both to attempt to indict on the new charges and to gain information for the motion to revoke which was subsequently amended just days after the interview.

The trial court found that the statement, information and evidence obtained as a result of the interview on June 13, 2011, were acquired in violation of Johnnie Owen's Sixth Amendment rights and therefore were suppressed.

## II. STANDARD OF REVIEW AND APPLICABLE LAW

We review a trial court's ruling on a motion to suppress a statement made as a result of custodial interrogation under the bifurcated standard articulated in *Guzman v. State. Pecina*, 361 S.W.3d at 78–79 (citing *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997); *Leza v. State*, 351 S.W.3d 344, 349 (Tex. Crim. App. 2011); *Ripkowski*

9

*v. State*, 61 S.W.3d 378, 381–82 (Tex. Crim. App. 2001)).  "We afford almost total deference to the trial court's rulings on questions of historical fact and on application of law to fact questions that turn upon credibility and demeanor while we review de novo the trial court's rulings on application of law to fact questions that do not turn upon credibility and demeanor."  *Id.* at 79.  Here, the relevant facts are undisputed and the issue is whether Owen knowingly and voluntarily waived his right to have counsel present during the interview.  Thus, the proper standard of review is de novo.  *See Mahaffey v. State*, 364 S.W.3d 908, 912 (Tex. Crim. App. 2012).

Article 38.22 of the code of criminal procedure sets forth procedural safeguards for securing the accused's privilege against self-incrimination in criminal proceedings. *Joseph v. State*, 309 S.W.3d 20, 23 (Tex. Crim. App. 2010) (citing TEX. CODE CRIM. PROC. ANN. art. 38.22).  Included within those safeguards is the prohibition against admission of any oral statement that the accused made during custodial interrogation unless the statement was recorded and, before the statement but during the recording, the accused was warned of his rights and "knowingly, intelligently, and voluntarily" waived those rights. *Id.* at 23–24; *see* TEX. CODE CRIM. PROC. ANN. art. 38.22, § 3(a)(1)–(2).[5]  Admissibility of

---

[5] Article 38.22 provides that the accused must be warned that

(1) he has the right to remain silent and not make any statement at all and that any statement he makes may be used against him at his trial;

(2) any statement he makes may be used as evidence against him in court;

(3) he has the right to have a lawyer present to advise him prior to and during any questioning;

(4) if he is unable to employ a lawyer, he has the right to have a lawyer appointed to advise him prior to and during any questioning; and

(5) he has the right to terminate the interview at any time.

*Joseph v. State*, 309 S.W.3d 20, 24 (Tex. Crim. App. 2010) (citing TEX. CODE CRIM. PROC. ANN. art. 38.22, § 2 [(West, Westlaw 2013 through 3d C.S.])); *see Miranda v. Arizona*, 384 U.S. 436, 444 (1996).

an accused's custodial-interrogation statement requires both the article 38.22 warning and a waiver. *See Joseph*, 309 S.W.3d at 24.

The Texas Court of Criminal Appeals has stated that a waiver of *Miranda* rights is knowing and intelligent if "the accused has been made aware and fully comprehends that he has the right to remain silent in the face of police interrogation and to discontinue the dialogue at any time, and that the consequence of his waiver is that his words may be used against him in a court of law." *Leza*, 351 S.W.3d at 350 (citing *Ripkowski*, 61 S.W.3d at 384 n.10).

### III. DISCUSSION

In his brief and at the suppression hearing, Owen argued that his Sixth Amendment right to counsel was violated because at the time of the custodial interview, Sergeant Camarillo knew that an attorney represented him in the revocation matter. In its findings and conclusions, the trial court agreed, concluding that "the very act of approaching [Owen] outside the presence of her [sic] counsel violated his Sixth Amendment right." The trial court further concluded that Owen did not knowingly, intelligently, and voluntarily waive his right to counsel because he was not informed that the State's motion to revoke could be amended and that the information he provided in the interview could be used against him in the revocation proceeding. Because we conclude that this case is governed by the court of criminal appeals' holding in *Pecina*, 361 S.W.3d at 80, we hold that the trial court erred in granting Owen's motion to suppress.

In a memorandum opinion not designated for publication, the San Antonio Court of Appeals recently summarized and applied the holding in *Pecina*. *Smith v. State,* No. 04-12-00819-CR, 2014 WL 129632, at **1–2 (Tex. App.—San Antonio Jan. 15, 2014, no pet.) (mem. op., not designated for publication). Although we recognize that *Smith* has

11

no precedential value, *see* TEX. R. APP. P. 47.7(a), we nonetheless find its reasoning persuasive:

> [T]he Court of Criminal Appeals recently determined that a request for court-appointed counsel during an Article 15.17 hearing does not invoke the right to counsel for a subsequent police interrogation in *Pecina v. State*. There, the Court discussed the difference between the Fifth and Sixth Amendment rights to counsel after the United States Supreme Court's decision in *Montejo v. Louisiana*. *Pecina v. State*, 361 S.W.3d 68, 73 (Tex. Crim. App. 2012). While in the hospital, Pecina was arrested for killing his wife. *Id.* at 71. After police obtained an arrest warrant, a magistrate was taken to his hospital room where Pecina was arraigned pursuant to Article 15.17. *Id.* at 72. During the Article 15.17 hearing, Pecina requested a court-appointed attorney. *Id.* The magistrate then asked if Pecina wished to speak with police officers waiting outside, and Pecina responded that he did. *Id.* Prior to speaking with the detectives, the officers advised Pecina of his *Miranda* rights, and Pecina waived them. *Id.*
>
> Pecina later sought to have the trial court suppress the statements he gave to the officers. The Court determined Pecina waived his Fifth and Sixth Amendment rights to counsel—after asking for a court-appointed attorney at an Article 15.17 hearing—because he "never invoked his right to interrogation counsel after police gave him Miranda warnings." *Id.* at 71. The *Pecina* court analyzed *Montejo* and summarized its application by stating:
>
>> Distilled to its essence, *Montejo* means that a defendant's invocation of his right to counsel at his Article 15.17 hearing says nothing about his possible invocation of his right to counsel during later police-initiated custodial interrogation. The [Article 15.17] magistration hearing is not an interrogation event. An uncharged suspect may invoke his Fifth Amendment right to counsel (and a defendant who has been arraigned may invoke his Sixth Amendment right to counsel) for purposes of custodial interrogation when the police or other law-enforcement agents approach him and give him his Miranda warnings. That is the time and place to either invoke or waive the right to counsel for purposes of police questioning.
>
> *Id.* at 78. In accordance with *Montejo* and *Pecina*, we conclude appellant's invocation of his right to counsel at his Article 15.17 hearing did not invoke his right to counsel for his subsequent interrogation.

12

*Smith,* 2014 WL 129632, at **1–2; *see also Knight v. State*, 406 S.W.3d 578, 589 (Tex. App.—Eastland 2013, pet. ref'd) (relying on *Pecina* in holding that appellant, after he was magistrated and had requested an attorney, waived his right to counsel during custodial interrogation by failing to request counsel "when law enforcement personnel approach[ed] him and warn[ed] him of his rights under *Miranda*"); *Banks v. State*, No. 14-11-00722-CR, 2013 WL 1907884, at **8–9 (Tex. App.—Houston [14th Dist.] May 7, 2013, pet. ref'd) (mem. op., not designated for publication) (relying on *Pecina* and *Montejo* in rejecting appellant's argument that his Sixth Amendment right to counsel was violated by fact that he was represented by counsel and interviewed without notice to counsel).

Here, the trial court erred in concluding that by "the very act of approaching" Owen without the presence of counsel, Sergeant Camarillo violated Owen's Sixth Amendment right. *See Pecina*, 361 S.W.3d at 78 ("If the defendant also wishes to invoke his Sixth Amendment right to counsel during the 'critical stage' of post-arraignment custodial interrogation, he may certainly do so. But he does so by invoking that right to counsel, pursuant to *Miranda*, *Edwards*, and *Minnick* when law enforcement or other state agents embark upon custodial interrogation.") (footnotes omitted); *Hughen v. State*, 297 S.W.3d 330, 335 (Tex. Crim. App. 2009) ("After *Montejo*, the Sixth Amendment does not bar police-initiated interrogation of an accused who has previously asserted his right to counsel. On the other hand, the Fifth Amendment does bar police-initiated interrogation of an accused who, in the context of custodial interrogation, has previously asserted his right to counsel during such interrogation, unless the accused's counsel is actually present.") (citations omitted).[6] In the present case, with regard to the allegations

---

[6] We note that, although Owen disputes that he initiated the contact with Sergeant Camarillo, and the trial court's findings of fact do not resolve the dispute ("[Sergeant] Camarillo made contact with" Owen), it does not matter. Thus, for purposes of our review, we assume that law enforcement officers initiated the

13

regarding use or manufacture of methamphetamine, Owen's Sixth Amendment right to counsel had not attached. Owen was arrested on a motion to revoke that did not contain the allegations of manufacturing or distribution of methamphetamine. "The Sixth Amendment right to counsel attaches once the 'adversary judicial process has been initiated[.]'" *Pecina*, 361 S.W.3d at 77. "Generally, an Article 15.17 initial appearance and magistration marks the initiation of adversarial judicial proceedings in Texas and 'plainly signals' the attachment of a defendant's Sixth Amendment right to counsel." *Id.*

The United States Supreme Court has held that, in deciding whether an accused "actually invoked his right to counsel," reviewing courts must use an objective standard "[t]o avoid difficulties of proof and to provide guidance to officers conducting interrogations[.]" *Pecina*, 361 S.W.3d at 79 (quoting *Davis v. United States*, 512 U.S. 452, 458–59 (1994)). "The accused 'must unambiguously request counsel' during a custodial interrogation; thus, 'he must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney.'" *Id.* (quoting *Davis*, 512 U.S. at 459). "We view the totality of circumstances from the viewpoint of the objectively reasonable police officer conducting custodial interrogation." *Id.*

We have reviewed Sergeant Camarillo's interview with Owen.[7] At the beginning of the interview, Sergeant Camarillo asked if Owen had retained a lawyer. Owen confirmed that he had retained a lawyer. Sergeant Camarillo stated that without Owen's lawyer present, Owen cannot speak to law enforcement. Owen responded, "I can talk,

---

contact.
    [7] We note that the videotaped interview is almost inaudible and very difficult to understand. This Court requested an additional copy, and received a second copy that was also almost inaudible.

14

depends upon what it is. If it is the MTR, I can't talk. If it's something else, then I can talk."[8] Sergeant Camarillo then advised Owen of his rights, including the right to terminate the interview at any time. Owen then signed and initialed a waiver card. We conclude that Owen failed to "unambiguously request counsel" during his custodial interrogation. *See id.*[9]

Although Owen could have invoked his Fifth Amendment right to have counsel present at the beginning of his interview with Sergeant Camarillo, *see id.* at 78, it is undisputed that he failed to do so. And even if he had a Sixth Amendment right to counsel regarding the methamphetamine allegations, he waived it by failing to invoke it at the beginning of the interview. *See id.* at 80 ("[Appellant] could invoke either [his Fifth or Sixth Amendment right to counsel] or both in precisely the same manner—by telling the officers, after they gave him the *Miranda* warnings, that he wished to have an attorney before speaking to them. He did not do so."). Accordingly, we hold that Owen waived his Fifth right and his Sixth Amendment right, if any, to the presence of counsel during custodial interrogation by failing to invoke his right to counsel when he was approached for custodial interrogation. *See id.*

---

[8] Although the videotaped interview is difficult to understand, the State quoted Owen in its brief. Owen does not dispute the quoted language, and we agree that it accurately reflects the gist of Owen's statement.

[9] *See*, *e.g.*, *Davis v. United States*, 512 U.S. 452, 462 (1994) (holding that statement, "Maybe I should talk to a lawyer" was not request for counsel); *Davis v. State* 4, 313 S.W.3d 317, 341 (Tex. Crim. App. 2010) (holding that statement, "I should have an attorney" was not unambiguous request for counsel); *Mbugua v. State*, 312 S.W.3d 657, 665 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd) (holding that question, "Can I wait until my lawyer gets here?" was not unambiguous request for counsel); *Gutierrez v. State*, 150 S.W.3d 827, 832 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (deciding that question, "Can I have [my attorney] present now?" was ambiguous question about counsel); *Halbrook v. State*, 31 S.W.3d 301, 302 (Tex. App.—Fort Worth 2000, pet. ref'd) (determining that statement, "Do I get an opportunity to have my attorney present?" did not constitute clear and unambiguous invocation of counsel); *Flores v. State*, 30 S.W.3d 29, 34 (Tex. App.—San Antonio 2000, pet. ref'd) (holding that question, "Will you allow me to speak to my attorney before?" was not clear and unequivocal invocation of right to counsel).

The trial court also concluded that because Owen was not informed that the information he provided could be used to amend the State's motion to revoke, he did not knowingly, intelligently, and voluntarily waive his rights. We disagree.

In *Leza v. State*, the court of criminal appeals explained:

There are two facets to any inquiry with respect to the adequacy of a purported waiver of *Miranda* rights:

> First, the waiver must be "voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." Second[,] the waiver must be made "with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it."

Before it may be said that a waiver of a *Miranda* right is involuntary, however, there must be some element of official intimidation, coercion, or deception. And, with respect to the requirement that the waiver also be knowing and intelligent,

> [o]nce it is determined that a suspect[ ] . . . at all times knew he could stand mute . . ., and that he was aware of the State's intention to use his statements to secure a conviction, the analysis is complete and the waiver is valid as a matter of law.

> It will suffice to render a waiver knowing and intelligent, in other words, that the accused has been made aware, and fully comprehends, that he has the right to remain silent in the face of police interrogation and to discontinue the dialogue at any time, and that the consequence of his waiver is that his words may be used against him later in a court of law. It is true, as the appellant contends, that none of the interrogating officers expressly informed him that the subject of the interrogation would be, not the traffic infraction for which he was arrested, but the capital murder of which he was suspected. But this circumstance is patently insufficient, as a matter of law, to render his waiver of *Miranda* rights either involuntary or insufficiently informed. The Supreme Court of the United States has expressly determined that "a suspect's awareness of all the possible subjects of questioning in advance of interrogation is not relevant to determining whether the suspect voluntarily, knowingly, and intelligently waived his Fifth Amendment privilege."

*Leza*, 351 S.W.3d at 349–50 (internal quotations, footnotes, and citations omitted).

16

We have already held that Owen waived his Fifth Amendment right and his Sixth Amendment right, if any, to counsel during the custodial interrogation by failing to invoke his right to counsel when Sergeant Camarillo approached him and gave him his *Miranda* warnings. *See Pecina*, 361 S.W.3d at 78 (noting that a defendant may invoke Fifth and Sixth Amendment right to counsel when law-enforcement agents approach him and give him his *Miranda* warnings). We further hold that Owen's waiver of his rights was voluntary, knowing, and intelligent. *See Leza*, 351 S.W.3d at 350 ("After all, the appellant was expressly informed that '*anything*' he said may be used against him.") (quoting *Colorado v. Spring*, 479 U.S. 564, 577 (1987)). We sustain the State's sole issue.

## IV. CONCLUSION

We reverse the trial court's order granting Owen's motion to suppress and remand to the trial court for further proceedings consistent with this opinion.

DORI CONTRERAS GARZA,
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).


Delivered and filed the
29th day of May, 2014.

17