**UNITED STATES of America**

v.

**Alexis Javier TORRES–HERNANDEZ, Defendant.**

**EP–15–CR–1624–PRM–1**

United States District Court, W.D. Texas, El Paso Division.

Signed 11/23/2015

Lisa Leontiev, U.S. Attorney's Office, El Paso, TX, for United States of America.

Andrew Lafayette Steed, Federal Public Defender, El Paso, TX, for Defendant.

## CORRECTED ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS [1]

PHILIP R. MARTINEZ, UNITED STATES DISTRICT JUDGE

On this day, the Court considered Defendant Alexis Javier Torres–Hernandez's "Motion to Suppress" (ECF No. 50) [hereinafter "Motion"], filed on October 15, 2015, and the Government's "Response to Defendant's Motion to Suppress" (ECF No. 58) [hereinafter "Response"], filed on October 26, 2015, in the above-captioned cause. In his Motion, Defendant asks the Court to "suppress and exclude the oral statements he allegedly made after he invoked his right to counsel." Mot. 1.

The Court held an evidentiary hearing on Defendant's Motion on October 28, 2015. Minute Entry, Oct. 28, 205, ECF No. 59. After weighing the evidence and arguments proffered by the parties, the Court

---

1. The Court's first "Order Denying Defendant's Motion to Suppress" (ECF No. 71), filed on November 20, 2015, mistakenly stated that Drug Enforcement Administration Agent Julian Mora, rather than Agent Victor Cardoza, provided testimony at the suppression hearing. The Court hereby corrects and supplants the Court's previous Order with this Corrected Order.

is of the opinion that Defendant's Motion should be denied for the reasons that follow.

## I. FACTUAL BACKGROUND

Defendant was arrested on August 28, 2015, for allegedly possessing, and conspiring to possess, marijuana with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and § 846. Crim. Compl. 1, Aug. 31, 2015, ECF No. 2. According to the Criminal Complaint,[2] on August 28, 2015, at around 12:10 a.m., border patrol agents ("BPA") Alfredo Alvillar and Joseph Hernandez located five individuals, including Defendant and an unidentified juvenile, in a cotton field half a mile north of the border. BPAs Alvillar and Hernandez located Defendant and the other four individuals after following several footprints approximately six miles west of the Tornillo, Texas Port of Entry leading north and away from the Rio Grande River, which is the Mexico/United States International Boundary in this area. *Id.* Three of the individuals were located together, lying on top of four bundles wrapped in burlap. *Id.* Defendant and another individual were located "a few feet away from the other individuals." *Id.* All of the individuals were located within the immediate proximity of the bundles. *Id.*

BPA Alvillar "identified himself as an immigration officer and questioned all five individuals as to their citizenship." *Id.* And, "[a]ll five individuals stated that they were citizens of Mexico without any documents allowing them to be in the United States legally. *Id.* BPA Victor Loya then provided all five individuals with their Miranda Rights. *Id.* All five individuals invoked their right to remain silent, indicating "that they understood their rights and did not want to answer questions without the presence of an attorney." *Id.* Defendant and the other four individuals were then arrested and transported to the Clint Border Patrol Station ("Station"), along with the burlap sacks, for processing and further questioning. *Id.* at 3. At the Station, the four adult individuals were once again provided with their Miranda rights, and they all requested to speak with an attorney before answering any questions. *Id.*

At the Station, BPA Alvillar tested the contents of the burlap sack and found that it tested positive for the properties of marijuana.[3] *Id.* DEA Task Force Agents ("Agents") Julian Mora and Victor Cardoza were then contacted and responded to the Station to further investigate the case. *Id.* Once Agents Mora and Cardoza arrived at the Station, they "only asked questions [of the four individuals] pertaining to [their] biographical data since they invoked their right to legal counsel." *Id.* At around 12:30 p.m., Agents Cardoza and Mora secured the bundles of marijuana into the prisoner transport van's storage compartment—which was located behind the driver seat—making the bundles visi-

**2.** At the suppression hearing, Drug Enforcement Administration ("DEA") Task Force Agent Victor Cardoza provided testimony regarding the events that transpired after he was called to the Clint Border Patrol Station. No evidence was provided that contradicted the factual narrative provided in the Criminal Complaint. Therefore, for the purposes of providing context regarding the events that transpired before DEA Task Force Agent Cardoza became involved, the Court will consider the Criminal Complaint as a supplement to the testimony provided at the suppression hearing.

**3.** The Court notes that the Criminal Complaint states that BPA Alvillar tested the contents of "the" burlap sack—in the singular. It is not clear whether Agent Alvillar tested the rest of the burlap sacks that agents seized from Defendant and the other four individuals with whom he was arrested. However, this inquiry is not relevant to the Court's analysis regarding the suppression of Defendant's statement.

ble to entering passengers. Fifteen minutes later, Agents Mora and Cardoza secured Defendant and the three other adult individuals in the rear compartment of the prisoner transport van.

The statement that Defendant now seeks to suppress was part of a dialogue that transpired between Agent Cardoza and Defendant shortly thereafter. Upon entering the rear of the prisoner transport van, Defendant stated, in Spanish, that it smelled like marijuana.[4] Agent Cardoza then pointed towards the bundles in the storage compartment and stated, also in Spanish, that the order was emanating from the bundles that they had been carrying.[5] Defendant, looking in the direction of the storage compartment where the bundles of marijuana had been placed, then stated, in Spanish, that they were indeed the same bundles.[6] Defendant seeks to suppress only the statement that he made to Agent Cardoza confirming that the bundles were indeed the ones that he and the other individuals who were arrested had been carrying.

## II. LEGAL STANDARD

The seminal case of *Miranda v. Arizona* "established that the prosecution may not use statements stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *United States v. Bennett*, 626 F.2d 1309, 1311 (5th Cir. 1980) (citing 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)). "The safeguards of *Miranda v. Arizona* ... are well-established," *United States v. Payne*, 954 F.2d 199, 201 (4th Cir. 1992), and

include "the now famous Miranda rights," *Bennett*, 626 F.2d at 1311. The Supreme Court expounded on the meaning of "custodial interrogation" for Fifth Amendment purposes in *Rhode Island v. Innis*, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). In *Innis*, the Supreme Court clarified that interrogation can include more than express questioning: "[T]he Miranda safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent." *Innis*, 446 U.S. at 300–01, 100 S.Ct. 1682. Therefore, "the term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Id.* at 301, 100 S.Ct. 1682. The focus is "primarily upon the perceptions of the suspect, rather than the intent of the police." *Id.*

Thus, "[a] practice that the police should know is reasonably likely to evoke an incriminating response from a suspect ... amounts to interrogation." *Id.* However, because "the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police officers that they *should have known* were reasonably likely to elicit an incriminating response." *Id.* at 301–02, 100 S.Ct. 1682. Furthermore, "[v]olunteered statements of any kind are not barred by the Fifth Amendment ..." *Miranda*, 384 U.S. at 478, 86 S.Ct. 1602. Additionally, "police

---

**4.** At the suppression hearing, Agent Cardoza testified that Defendant's exact words were the following: "huele a marihuana."

**5.** At the suppression hearing, Agent Cardoza testified that his exact words were the following: "Son los bultos que traían."

**6.** At the suppression hearing, Agent Cardoza testified that Defendant's exact words were the following: "Ah—si son."

statements that are part of a spontaneous colloquy initiated by the defendant that are immediately prompted by a statement of the defendant are not interrogation." *United States v. Medrano*, 208 F.Supp.2d 681, 685 (W.D. Tex. 2002) (citing *United States v. McQuagge*, 787 F.Supp. 637, 659 (E.D. Tex. 1991)).

## III. ANALYSIS

In his Motion, Defendant asks the Court to suppress "oral statements obtained by law enforcement agents after he unequivocally invoked his right to counsel." Mot. 3. At the suppression hearing, defense counsel made clear that Defendant does not seek to suppress his initial statement to Agent Cardoza that "it smelled like marijuana," as this statement was volunteered and was not made in response to any question, statement, or actions on the part of Agent Cardoza. However, Defendant does seek to suppress his statement to Agent Cardoza confirming that the bundles that the agents seized were the ones that Defendant and the four other individuals with whom he was arrested had been carrying. Specifically, in his Motion, Defendant argues that "[Defendant] never asked to speak to the agents" and that "even if the agent's claims are taken completely as true, [Defendant's] statement that the van smelled like marijuana did not evince a desire to waive his Miranda rights and open up discussion about the subject of the arrest." Mot. 2.

■ In his Motion, Defendant then goes into a detailed *Edwards v. Arizona* [7] analysis and argues that the *"Edwards* presumption of involuntariness" applies to his case and that he did not waive his Miranda rights voluntarily. *See* Mot. 3–5 (citing 451 U.S. 477, 481–87, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981)). However, Defendant prematurely launches into an *Edwards*

analysis without initially addressing the pivotal issue that merits consideration: whether Agent Cardoza subjected Defendant to a custodial interrogation or its functional equivalent. *See Edwards*, 451 U.S. at 485–86, 101 S.Ct. 1880 ("The Fifth Amendment right identified in *Miranda* is the right to have counsel present at any custodial interrogation. Absent such interrogation, there would have been no infringement of the right that *Edwards* invoked and there would be no occasion to determine whether there had been a valid waiver."). For the reasons set forth below, the Court concludes that Defendant was not subjected to an interrogation or its functional equivalent.

As outlined above, *Innis* made clear that an interrogation, for Fifth Amendment purposes, is not limited to express questioning and can include statements made by an officer that the officer should know are likely to illicit an incriminating response. *See* 446 U.S. at 301, 100 S.Ct. 1682. Therefore, the question is whether Agent Cardoza's statement to Defendant that the smell of marijuana was coming from the bundles that Defendant and the four other individuals had been carrying was a statement that Agent Cardoza should have known was likely to illicit an incriminating response from Defendant.

The case law following *Innis* has set a high standard for officers' statements to be characterized as the functional equivalent of an interrogation. This standard was best articulated by the Fourth Circuit in *United States v. Johnson*:

> It is possible, of course, that a suspect in custody could implicate himself in a criminal act in response to any question or action no matter how innocuous. If possibility were the standard, therefore, an officer would risk suppression when-

---

**7.** *Edwards v. Arizona* discusses the requirements necessary for a knowing and voluntary waiver of a defendant's Miranda rights. 451 U.S. at 481–87, 101 S.Ct. 1880.

ever he spoke within earshot of an unwarned suspect. But *Miranda* was intended to protect suspects from coercive police practices, not render officers mute.

*United States v. Johnson*, 734 F.3d 270, 277 (4th Cir. 2013).

While the Fifth Circuit Court of Appeals has not had occasion to address a situation similar to the instant case where an officer confronts a defendant with inculpatory evidence in an arguably accusatory manner, its analyses of officers' statements in other contexts are informative and have contributed to this high standard. For example, the Fifth Circuit has held that an officer's statement to a defendant that his accomplice committed suicide was not "tantamount to 'interrogation.'" *Plazinich v. Lynaugh*, 843 F.2d 836, 839–40 (5th Cir. 1988) ("His information concerning [the defendant's accomplice] was not objectively likely to elicit an incriminating response from the suspect .... In the brief and informal context in which it was made, the comment could at most be characterized as offering [the defendant] 'food for thought' rather than seeking to provoke an incriminating response."). The Fifth Circuit has also held that a police officer's statement to other officers, in a defendant's presence, that there was a gun in the defendant's vehicle was not the functional equivalent of an interrogation. *United States v. Bennett*, 626 F.2d 1309, 1313 (5th Cir. 1980) ("[The officer's] remark was a natural exclamation in response to what he saw with no emotive undertones which could be expected to elicit a response.").

Furthermore, other courts of appeals have had occasion to address situations similar to the instant case where an officer allegedly confronts a·defendant with inculpatory evidence in an arguably accusatory manner, and their analysis is instructive. *See Caputo v. Nelson*, 455 F.3d 45, 50–51 (1st Cir. 2006) ("Since *Innis*, a number of courts have considered whether police may confront a suspect with evidence against him without engaging in the functional equivalent of interrogation.").

For instance, in *United States v. Payne*, the Fourth Circuit Court of Appeals held that a statement a federal agent made to the defendant informing him that officers found a gun at his house did not constitute an interrogation. 954 F.2d 199, 203 (4th Cir. 1992). In *Payne*, the Fourth Circuit first addressed the defendant's argument that "any· statement by an officer to a suspect that the police possess incriminating evidence is interrogation under *Innis* as a matter of law." *Id.* at 202. The *Payne* court rejected the defendant's argument, concluding that "[i]t simply cannot be said that all such statements are objectively likely to result in incriminating responses by those in custody." *Id.* at 203. In so holding, the *Payne* court explained the following:

> That no comment on the evidence in a case will ever issue in the presence of a criminal suspect seems to us neither realistic nor desirable as an absolute rule derived from the Fifth Amendment. Indeed, it may even be in the interest of a defendant to be kept informed about matters relating to the charges against him.

*Id.* at 202. The court then went on to analyze whether the agent's specific statement constituted an interrogation. The defendant, in *Payne*, argued that the agent's "statement to him constituted interrogation under *Innis* because, from his position, 'a statement that the police found a gun in his house called for an exculpatory response.'" *Id.* at 203. The *Payne* court also rejected this argument and agreed with the district court that the agent's statement "was not one that sought or required a response." *Id.* The court reasoned that it could not "conclude that [the

agent] 'should have known' that her statement, which was only a discussion of the ... evidence against [the defendant] was 'reasonably likely to elicit an incriminating response.'" *Id.* Additionally, the court noted that the defendant "was not subjected to compelling influences, psychological ploys, or direct questioning." *Id.* (quoting *Arizona v. Mauro*, 481 U.S. 520, 529, 107 S.Ct. 1931, 95 L.Ed.2d 458 (1987)). Ultimately, the court held that "the rather innocuous statement at issue ... did not constitute interrogation and should not result in the sanction of suppressing relevant and probative evidence." *Id.*

The Fourth Circuit is not alone; other circuits considering the issue have held similarly. *See, e.g., Easley v. Frey*, 433 F.3d 969, 974 (7th Cir. 2006) ("Like the Fourth Circuit, we do not believe that the provision of information, even if its weight might move a suspect to speak, amounts to an impermissible 'psychological ploy' .... [The defendant] has not suggested that [the officer's] statement was anything more than a matter-of-fact communication of the evidence against him and the potential punishment he faced."); *United States v. McKenzie*, 132 Fed.Appx. 788, 789–90 (11th Cir. 2005) (holding that a police officer's statement to the defendant advising him that marijuana and cocaine were found in his room was not the functional equivalent of an interrogation for *Miranda* purposes); *United States v. Moreno–Flores*, 33 F.3d 1164, 1169–70 (9th Cir. 1994) (holding that an agent's statements to the defendant informing him that the agent seized cocaine and that the defendant was in trouble were not the functional equivalent of an interrogation) ("The fact that [officer's statements] might have struck a responsive chord, or even that they may have constituted 'subtle compulsion' is insufficient to find that they were the functional equivalent of interrogation.").

The Court agrees with the circuit courts that have considered this issue. Similar to the situation in the *Payne* case, Agent Cardoza's statement to Defendant that the smell of marijuana was emanating from the bundles that he and the other four individuals had been carrying was an innocuous factual statement regarding the evidence that the agents seized from Defendant. Moreover, Agent Cardoza's statement followed on the heels of Defendant's statement regarding the smell of the marijuana. Defendant elected to offer this statement regarding the smell of the prisoner transport van notwithstanding his invocation of his right to remain silent. Agent Cardoza's statement was no more of a question that invited a response than was the statement made by Defendant himself. It was not an express question and was not a statement that Agent Cardoza could have reasonably expected to illicit an incriminating response; "[t]here is no indication [that Agent Cardoza] wanted demanded, or expected a response from [Defendant]. As such, [Agent Cardoza] could not have reasonably anticipated [Defendant's] response." *See Bennett*, 626 F.2d at 1313.

■ This notion was corroborated at the suppression hearing; Agent Cardoza indicated that he did not expect Defendant to say anything in response to his statement and that he was surprised by Defendant's response. When Agent Cardoza was asked whether his intent in making the statement was to try to get Defendant to say something in response, he indicated that it was not. "Although not the primary focus, Agent [Cardoza's] lack of intent to evoke an incriminating response also weighs against suppressing Defendant's statement." *See United States v. Chrisman*, 209 F.Supp.2d 659, 667 (W.D. Tex. 2002). Ultimately, the Court finds that Agent Cardoza's statement, in "the brief and informal

864

context in which it was made," does not fall into the category of coercive police tactics that *Miranda* prohibits. *See Plazinich*, 843 F.2d at 840. Indeed, Defendant "was not subjected to compelling influences, psychological ploys, or direct questioning." *See Mauro*, 481 U.S. at 529, 107 S.Ct. 1931.

Therefore, the Court concludes that Defendant was not subjected to an interrogation or its functional equivalent under *Innis*, and, consequently, Agent Cardoza's statement did not offend his duty to honor Defendant's invocation of his right to counsel.

## IV. CONCLUSION

After affording due consideration to Defendant's request for suppression and weighing the evidence proffered at the evidentiary hearing, the Court finds that Agent Cardoza's conversation with Defendant was not a custodial interrogation or the functional equivalent. Therefore, the Court finds that Defendant's statements to Agent Cardoza are not subject to suppression and denies Defendant's Motion.

Accordingly, **IT IS ORDERED** that Defendant Alexis Javier Torres–Hernandez's "Motion to Suppress" (ECF No. 50) is **DENIED.**